# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3481

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of South Dakota. |
| | * | |
| Nathan Thunder Hawk, | * | |
| | * | |
| Defendant - Appellant. | * | |
| | * | |

_____

Submitted: February 12, 1997
Filed: October 14, 1997

_____

Before FAGG, HEANEY, and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Nathan Thunder Hawk entered a conditional guilty plea to operating a motor

vehicle under the influence of alcohol, and the district court[1] sentenced him to eighteen months in prison and three years of supervised release. On appeal, Thunder Hawk alleges that the district court erred in exercising jurisdiction over this case because federal authorities have no jurisdiction over offenses committed by one Indian against another Indian pursuant to 18 U.S.C. § 1152 (1994). We hold that the district court's exercise of jurisdiction was proper and therefore affirm the court's judgment.

On the morning of December 9, 1994, Thunder Hawk was driving his two children, ages three and seven, to school on the Pine Ridge Indian Reservation when he turned his car directly into the path of another car. The cars collided, pinning Thunder Hawk's seven-year old daughter in the car. Thunder Hawk's daughter suffered traumatic brain injury, a fractured rib, a lung contusion, and a lacerated liver. The child has now recovered from her injuries.

Shortly after the collision, Thunder Hawk submitted to a breathalyzer test that showed that his blood alcohol content was .11%. Thunder Hawk is an Indian[2] and was charged in Tribal Court with violating the Tribe's criminal code. Before the Tribal Court could hear the charge against Thunder Hawk, however, federal authorities charged him with driving a vehicle with a blood alcohol content in excess of .10% in violation of South Dakota law,[3] as assimilated by federal law. Thunder Hawk was subject to increased penalties under federal law because his minor daughter was injured in the collision. See 18 U.S.C. § 13(b)(2)(A) (1994).

Thunder Hawk moved to dismiss the federal charges based on 18 U.S.C. § 1152,

---

[1]The Honorable Richard H. Battey, Chief Judge, United States District Court for the District of South Dakota.

[2]Thunder Hawk is a member of the Cheyenne River Sioux Tribe.

[3]S.D. Codified Laws § 32-23-1(1) (Michie 1982).

which bars the exercise of federal jurisdiction over offenses committed by one Indian against the person or property of another Indian.  Because both Thunder Hawk and his daughter are Indians, he argued to the district court that this exception to federal jurisdiction applied.  The district court denied Thunder Hawk's motion to dismiss, convicted him of driving under the influence, and increased his imprisonment term based on his daughter's serious injuries.  Thunder Hawk now appeals the jurisdictional issue.

The issue of whether federal subject matter jurisdiction exists is subject to de novo review.  Clarinda Home Health v. Shalala, 100 F.3d 526, 528 (8th Cir. 1996). We must examine two federal statutes, the Indian Country Crimes Act and the Assimilative Crimes Act, to resolve the jurisdictional issue.  We first provide an overview of these statutes and explain how they interact, and then construe the specific statutory language at issue.

The Indian Country Crimes Act  provides as follows:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

> This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

18 U.S.C. § 1152 (emphasis added). The "general laws of the United States" emphasized in the first paragraph above refer to "federal enclave laws" and are "those laws passed by the federal government in the exercise of its police powers over federal

property." United States v. White, 508 F.2d 453, 454 (8th Cir. 1974). This statute is "not a predicate for general federal criminal jurisdiction in Indian country." Id. Rather, "[t]he statute applies only to federal enclave laws and does not encompass federal laws that make actions criminal wherever committed." United States v. Blue, 722 F.2d 383, 384 (8th Cir. 1983). Thus, in many instances, Indian tribes retain exclusive jurisdiction to enforce criminal laws among their members. "It is indisputed that Indian tribes have the power to enforce their criminal laws against tribe members. Although physically within the territory of the United States and subject to federal control, they remain 'a separate people' with attributes of sovereignty over their members, including the right to prescribe laws and to enforce those laws by criminal sanctions." Id. at 385-86 (quoting United States v. Wheeler, 435 U.S. 313, 322 (1978)).

The second paragraph of the ICCA contains three exceptions to the general extension of federal enclave law to Indian country. The first exception, emphasized above, is the exception upon which Thunder Hawk relies and is often referred to as the "Indian versus Indian" exception. This exception bars the exercise of federal jurisdiction over offenses committed by one Indian against the person or property of another Indian. "At an early period it became the settled policy of Congress to permit the personal and domestic relations of the Indians with each other to be regulated, and offenses by one Indian against the person or property of another Indian to be dealt with, according to their tribal customs and laws." United States v. Quiver, 241 U.S. 602, 603-04 (1916).

The Assimilative Crimes Act, 18 U.S.C. § 13,[4] is one of the federal enclave laws

---

[4]18 U.S.C. § 13 provides:

(a) Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is

made applicable to Indian country by the ICCA.  See United States v. Renville, 779

---

guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

(b)(1) Subject to paragraph (2) and for purposes of subsection (a) of this section, that which may or shall be imposed through judicial or administrative action under the law of a State, territory, possession, or district, for a conviction for operating a motor vehicle under the influence of a drug or alcohol, shall be considered to be a punishment provided by that law.  Any limitation on the right or privilege to operate a motor vehicle imposed under this subsection shall apply only to the special maritime and territorial jurisdiction of the United States.

(2)(A) In addition to any term of imprisonment provided for operating a motor vehicle under the influence of a drug or alcohol imposed under the law of a State, territory, possession, or district, the punishment for such an offense under this section shall include an additional term of imprisonment of not more than 1 year, or if serious bodily injury of a minor is caused, not more than 5 years, or if death of a minor is caused, not more than 10 years, and an additional fine of not more than $1,000, or both, if --

(i) a minor (other than the offender) was present in the motor vehicle when the offense was committed; and

(ii) the law of the State, territory, possession, or district in which the offense occurred does not provide an additional term of imprisonment under the circumstances described in clause (i).

(B) For the purposes of subparagraph (A), the term "minor" means a person less than 18 years of age.

F.2d 430, 432 n.3 (8th Cir. 1985); Blue, 722 F.2d at 386 n.4; see also Williams v. United States, 327 U.S. 711, 712-13 (1946).   Under the ACA, if conduct prohibited by state law occurs on federal land, the state criminal law is assimilated into federal law unless the conduct is already governed by federal law.  See  United States v. Hall, 979 F.2d 320, 322 (3d Cir. 1992).  "In other words, the ACA fills gaps in the law applicable to federal enclaves, ensures uniformity between criminal prohibitions applicable within the federal enclave and within the surrounding state, and provides residents of federal enclaves with the same protection as those outside its boundaries."  Id.

This case illustrates how the ACA fills gaps in the law.  There is no specific federal law that criminalized Thunder Hawk's actions in driving under the influence of alcohol in the circumstances of this case.  To fill this gap in the law, the prosecution used the ACA to assimilate the South Dakota DUI statute into federal law.

The ACA was amended by the Drunk Driving Child Protection Act of 1994 to impose additional penalties on persons convicted of DUI offenses if a minor child is in the vehicle, unless state law already increases the term of imprisonment in such circumstances.  The penalty further increases if the minor child is seriously injured or killed.  See 18 U.S.C. § 13(b)(2)(A).

Thunder Hawk was subject to the ACA's increased penalties under the Drunk Driving Child Protection Act because his daughter was in the car and seriously injured when he drove under the influence of alcohol.  Accordingly, the issue before the court is whether the crime with which Thunder Hawk was charged is an "offense[] committed by one Indian against the person or property of another Indian."  18 U.S.C. § 1152.

The task of construing the meaning of the ICCA and the ACA "begins where all such inquiries must begin: with the language of the statute itself."  United States v. Ron Pair Enter., Inc., 489 U.S. 235, 241 (1989).  If the statute's language is plain, "it is also where the inquiry should end" because "'the sole function of the courts is to enforce it

according to its terms.'" Id. (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)).

The language at issue in the ICCA, the "Indian versus Indian" exception, is plain and unambiguous. The exception eliminates federal jurisdiction over "offenses committed by one Indian against the person or property of another Indian." 18 U.S.C. § 1152. There is no dispute that both Thunder Hawk and his daughter are "Indians" within the meaning of this phrase. Rather, the issue here turns on the nature of the "offense" committed by Thunder Hawk. Thunder Hawk characterizes his offense as one that he, an Indian, committed against his daughter, also an Indian, as the victim of drunk driving. Neither the facts nor the law, however, support this characterization. Thunder Hawk was charged with, and convicted of, operating a motor vehicle while under the influence of alcohol.[5] This offense does not require a victim, whether Indian or non-Indian.

With respect to the ACA, its plain language reveals that the provision regarding minors is a sentencing enhancement to the underlying DUI offense and not a separate offense. The introductory clause states: "In addition to any term of imprisonment provided for operating a motor vehicle under the influence of a drug or alcohol imposed under the law of a State . . . ." 18 U.S.C. § 13(b)(2)(A). This unambiguous language

---

[5]The Grand Jury indicted Thunder Hawk as follows:

> On or about the 9th day of December, 1994, at Wounded Knee, in Indian country, in the District of South Dakota, Nathan Thunder Hawk did commit the public offense of Driving or Control of Vehicle While under the Influence of Alcohol in that he did then and there drive and be in actual physical control of a vehicle while under the influence of an alcoholic beverage, in violation of S.D.C.L. § 32-23-1(2), said operation of a motor vehicle causing serious bodily injury to [name redacted], a person less than eighteen years of age, all in violation of 18 U.S.C. § 7, 13, and 1152.

imposes additional penalties for DUI offenses involving minors. This particular provision cannot stand alone; it is conditioned upon conviction for the underlying offense.

Our conclusion is supported by other cases in which courts have been called upon to determine whether a particular statute contained separate offenses or a single offense which carried an enhanced sentence in certain circumstances. In United States v. Ryan, 9 F.3d 660 (8th Cir. 1993), aff'd, 41 F.3d 361 (8th Cir. 1994) (en banc), cert. denied, 514 U.S. 1082 (1995), the court examined a criminal arson statute. As with the ACA, this criminal statute, 18 U.S.C. § 844(i) (1994), subjected the defendant to increased penalties if someone was injured or killed during the commission of the underlying offense. Id. at 665. The defendant argued that the statute "created three distinct offenses, with graded punishments depending upon the seriousness of the resulting harm." Id. at 667. The court held that the statute contained a sentence enhancement provision, rather than multiple offenses, because it conditioned punishment upon conviction for the underlying crime, and the increased penalties section could not stand alone, independent of the underlying arson offense. Id. at 668. The court also found that the legislative history supported such a conclusion. Id. at 669.

The federal carjacking statute, 18 U.S.C. § 2119 (1994), was examined in United States v. Williams, 51 F.3d 1004 (11th Cir.), cert. denied, 116 S. Ct. 258 (1995). The statute defined the carjacking offense in the first paragraph, followed by three subparagraphs setting forth sentencing options with increasing severity. As with the ACA, punishment was more severe if serious bodily injury resulted from the offense, and punishment further increased if death was caused. Id. at 1008. The court held that the subparagraphs referring to bodily injury and death were sentencing enhancement

provisions and not elements of the offense.  Id. at 1009.[6]

Thunder Hawk contends that the ICCA was not intended to apply to "victimless" crimes involving only Indians and cites to the Supreme Court's decision in United States v. Quiver.  In Quiver, the United States charged the Indian defendant with adultery, and his alleged adulterous relationship was with another Indian.  241 U.S. at 603.  The government argued that the "Indian versus Indian" exception did not apply because adultery involves voluntary participants, rather than one person committing an offense against another.  The Court refused to follow such a strict reading of the exception and dismissed the adultery charge.  Id. at 605.

We do not believe, however, that Quiver stands for the proposition that the "Indian versus Indian" exception applies to every "victimless" crime involving Indians.[7] Quiver involved domestic relations, an area traditionally left to tribal self-government. In such a case, including "victimless" crimes within the "Indian versus Indian"

---

[6]See also United States v. Patterson, 38 F.3d 139, 143-44 (4th Cir. 1994) (holding that 28 U.S.C. § 841(b)(1)(C) (1994) was a sentencing enhancement provision; it increased the term of imprisonment if death or serious injury resulted from the distribution of a controlled substance), cert. denied, 514 U.S. 1113 (1995); United States v. Young, 936 F.2d 1050, 1054 (9th Cir. 1991) (per curiam) (holding that 18 U.S.C. § 111 (1994) included a sentencing enhancement provision, and not a separate offense, where the provision was not a "stand-alone" offense); United States v. Rush, 840 F.2d 574, 577-78 (8th Cir.) (en banc) (18 U.S.C. § 1202(a) (1994) imposed penalties for illegally possessing a firearm, and the penalties were increased if the defendant had three prior convictions for robbery or burglary; held to contain a sentence enhancement and not an independent offense), cert. denied, 487 U.S. 1239 (1988).

[7]In United States v. Blue, we observed that "the Indian against Indian exception has been read broadly to include 'victimless crimes' affecting only Indians."  722 F.2d at 386 n.4.  This observation was dicta because we found it unnecessary to decide whether the exception applied in that case.

exception preserves the tribe's exclusive jurisdiction over domestic matters.  Here, in contrast, the prohibition of and punishment for driving under the influence has not traditionally been within the exclusive jurisdiction of Indian tribes.  Rather, the ACA "assimilates state traffic laws and others into federal enclave law in order 'to fill in the gaps in the Federal Criminal Code, where no action of Congress has been taken to define the missing offense.'" United States v. Pino, 606 F.2d 908, 915 (10th Cir. 1979) (quoting United States v. Sosseur, 181 F.2d 873, 875 (7th Cir. 1950)); see also United States v. Altman, 931 F.2d 898, 1991 WL 67887, **1-2 (9th Cir. May 2, 1991) (unpublished table decision) (affirming ACA's assimilation of state DUI law); Ross v. Neff, 905 F.2d 1349, 1353 (10th Cir. 1990) ("There is no question but that 18 U.S.C. § 13 would allow federal enforcement of the local ordinance against public intoxication involved in this case."); United States v. Kiliz, 694 F.2d 628, 629 (9th Cir. 1982) (ACA assimilated state law prohibiting operating a motor vehicle without a license). Moreover, the offense of driving under the influence is more akin to an offense against the public at large, both Indian and non-Indian, rather than a true "victimless" crime. See, e.g., United States v. Sosseur, 181 F.2d 873, 876 (7th Cir. 1950) (holding that the United States had jurisdiction to charge the defendant under the ACA with violating state law forbidding operation of slot machines; the offense impacts both Indians and non-Indians).

We hold that the "Indian versus Indian" exception to the ICCA does not apply here because Thunder Hawk's offense, driving under the influence of alcohol, was not against the person or property of another Indian.  Therefore, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.