**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ricco Devon PRENTISS, Defendant–Appellant.**

No. 98–2040.

United States Court of Appeals,
Tenth Circuit.

July 12, 2001.

Norman C. Bay, United States Attorney (Richard A. Friedman, Appellate Section, Criminal Division, Jason Bowles and Fred J. Federici, Assistant United States Attorneys, with him on the brief), Albuquerque, NM, for Plaintiff–Appellee.

Michael A. Keefe, Assistant Federal Public Defender, Albuquerque, NM, for Defendant–Appellant.

Before TACHA, Chief Judge, and SEYMOUR, BALDOCK, BRORBY, EBEL, KELLY, HENRY, BRISCOE, LUCERO, and MURPHY, Circuit Judges.

## ON REHEARING EN BANC

PER CURIAM.

After a divided panel vacated the defendant's conviction for committing arson in Indian country, in violation of 18 U.S.C. §§ 81 and 1152, *see United States v. Prentiss*, 206 F.3d 960, 962 (10th Cir.2000), this court granted rehearing en banc on the following questions: (1) whether the Indian/non–Indian statuses of the victim and the defendant constitute elements of the crime, and, if so, (2) whether the failure of an indictment to allege these elements deprives the court of subject matter jurisdiction or instead is subject to harmless error review.

A majority of this court agrees with the panel opinion's conclusion that the Indian

and non-Indian statuses of the victim and the defendant are elements of the crime of arson in Indian country under 18 U.S.C. §§ 81 and 1152. Judge Henry's opinion (joined by Judges Seymour, Ebel, Briscoe, Lucero, and Murphy) sets forth the reasons for this view. However, in contrast to the original panel, a majority of this court further concludes that the indictment's failure to allege the Indian/non-Indian statuses of the victim and the defendant did not deprive the district court of subject matter jurisdiction and is therefore subject to review for harmless error. In so holding, the majority overrules the contrary holdings in *United States v. Brown,* 995 F.2d 1493, 1504 (10th Cir.1993) and *United States v. Smith,* 553 F.2d 1239, 1240–42 (10th Cir.1977). Judge Baldock's opinion (joined by Chief Judge Tacha and Judges Brorby, Kelly, Briscoe, and Murphy) explains the reasons for this conclusion.

As a result, we REMAND this case to the decisional panel for further proceedings. On remand, the panel will be required to determine whether the failure of the indictment to allege the Indian/non-Indian statuses of the victim and the defendant was harmless beyond a reasonable doubt.

Judge Baldock (joined by Chief Judge Tacha and Judges Brorby and Kelly) dissents from the majority's conclusion that the Indian/non-Indian statuses of the victim and the defendant constitute elements of the crime of arson in Indian country. Judge Henry (joined by Judges Seymour, Ebel, and Lucero) dissents from the majority's conclusion that the indictment's failure to allege the status of the victim and the defendant is subject to harmless error analysis.

HENRY, joined by SEYMOUR, EBEL, LUCERO, BRISCOE, and MURPHY, Circuit Judges.

## I. BACKGROUND

The relevant facts are fully set forth in the panel opinion. *See Prentiss,* 206 F.3d at 962–63. A federal grand jury returned an indictment charging Mr. Prentiss with committing arson in Indian country in the following terms:

On or about the 22nd and 23rd day of November, 1996, within the confines of the Tesuque Pueblo, in Santa Fe County, in the State and District of New Mexico, the Defendant, **RICCO DE-VON PRENTISS,** did willfully and maliciously set fire and attempt to set fire to a dwelling.

In violation of 18 U.S.C. § 1152 and 18 U.S.C. § 81.

Rec. vol. I, doc. 1.

Mr. Prentiss challenged his conviction on appeal by arguing that the indictment was insufficient because it failed to allege two essential elements of the offense: the Indian/non-Indian statuses of the victim and the defendant. A majority of the panel agreed, holding that "the Indian statuses of the defendant and victim are essential elements under 18 U.S.C. § 1152, which must be alleged in the indictment and established by the government at trial." *Prentiss,* 206 F.3d at 966. Because the deficiency in the indictment was not subject to harmless error analysis, the panel vacated Mr. Prentiss's conviction.

Judge Baldock filed a vigorous dissent. *See id.* at 977–80 (Baldock, J., dissenting). He assumed, without deciding, that the Indian/non-Indian statuses of the victim and the defendant are elements. Nevertheless, Judge Baldock reasoned, Mr. Prentiss had failed to establish that he was prejudiced by the indictment's failure to allege them.

## II. INDIAN/NON–INDIAN STATUSES AS ELEMENTS

The exercise of criminal jurisdiction in Indian country affects three sovereigns: states, Indian tribes, and the federal government. *See Negonsott v. Samuels,* 507 U.S. 99, 102, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993) (noting that "[c]riminal jurisdiction over offenses committed in 'Indian country' 'is governed by a complex patchwork of federal, state, and tribal law' ") (citation omitted) (quoting *Duro v. Reina,* 495 U.S. 676, 680 n. 1, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990)). As a result, identifying the statuses of the defendant and the victim is often essential in determining what court may hear the case. Thus, states may exercise jurisdiction when the defendant and the victim are both non-Indians. *See United States v. McBratney,* 104 U.S. 621, 623–24, 26 L.Ed. 869 (1881) (concluding that, under the terms of its admission to the union, Colorado acquired criminal jurisdiction over non-Indians in Indian country within its borders). Tribes may exercise jurisdiction over Indians. *See* 25 U.S.C. § 1301(2) (recognizing and affirming "the inherent power of Indian tribes ... to exercise criminal jurisdiction over all Indians"); *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 212, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978) (holding that "Indian tribes do not have inherent jurisdiction to try and to punish non-Indians").

Because "Congress has ... constitutional power to prescribe a criminal code applicable in Indian country," *United States v. Antelope,* 430 U.S. 641, 648, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977), federal criminal jurisdiction is somewhat broader. Congress may establish federal crimes that may be prosecuted against citizens throughout the nation, including Indian country. Alternatively, it may create crimes that proscribe only particular conduct occurring within Indian country. *See* Robert N. Clinton, *Criminal Jurisdiction over Indian Lands: A Journey Through a Jurisdictional Maze,* 18 Ariz. L.Rev. 503, 520 (1976).

The statutes at issue here belong to the latter type. Section 81 establishes the crime of arson "within the ... territorial jurisdiction of the United States." *See* 18 U.S.C. § 81. The first paragraph of § 1152 provides that "the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States ... shall extend to the Indian country." 18 U.S.C. § 1152. It thus extends § 81's prohibition of arson to Indian country. However, the second paragraph of § 1152 provides:

> This section shall not extend [1] to offenses committed by one Indian against the person or property of another Indian, nor [2] to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or [3] to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.[1]

Read in conjunction with the Supreme Court's decision in *McBratney,* § 1152 establishes federal jurisdiction over interracial crimes only (i.e., when the defendant is an Indian and the victim is a non-Indian, or vice versa). *See Cohen, supra,* at 291 (stating that "the basic purpose of [§ 1152] is to punish interracial crimes"); Clinton,

---

**1.** Section 1152 is referred to as the Indian Country Crimes Act, the General Crimes Act, *see Felix S. Cohen's Handbook of Federal Indian Law* at 287 n. 50 (Rennard Strickland et al. ed.,1982) [hereinafter Cohen], and the Federal Enclave Act. *See United States v. Brisk,* 171 F.3d 514, 519 (7th Cir.1999). Its history is set forth in *United States v. Cowboy,* 694 F.2d 1228, 1232–33 (10th Cir.1982); *see also* Cohen, *supra,* at 287–300.

*supra*, at 526 (stating that "[t]he combined impact of ... *McBratney* and the express intra-Indian crime exclusion indicates that section 1152 jurisdiction is limited to interracial crimes").

■ Section 1152 does not expressly allocate the burden of alleging and proving the statuses of the victim and the defendant—facts necessary to establish federal jurisdiction. Accordingly, we must decide whether those facts constitute: (1) elements of arson in Indian country—"constituent parts of [the] crime," *United States v. Gonzalez–Lopez*, 911 F.2d 542, 547 (11th Cir.1990) (quoting *Black's Law Dictionary* 467 (5th ed.1979)) that must be "charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt," *Jones v. United States*, 526 U.S. 227, 232, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), or (2) affirmative defenses that must be asserted by the defendant.[2] If these facts are elements, then the government's allegation that the defendant committed arson in Indian country is insufficient to allege a federal crime under §§ 81 and 1152. In contrast, if the statuses of the victim and the defendant are affirmative defenses, the mere allegation that the arson occurred in Indian country suffices.

We begin our analysis by considering the victim's status. Then, we turn to the defendant's status. Finally, we consider the rules of statutory interpretation applicable to § 1152.

### A. Status of the Victim

Two Supreme Court decisions indicate that the status of the victim is an element.[3] In *Lucas v. United States*, 163 U.S. 612, 16 S.Ct. 1168, 41 L.Ed. 282 (1896), the government alleged in the indictment that the victim was a non-Indian and offered evidence at trial to support that allegation. The Court held that the trial judge erred by instructing the jury that it could presume that the victim was not an Indian because he was "a man who is a negro by blood." *Id.* at 615–16, 16 S.Ct. 1168. It reasoned that "the status of the deceased [was] a question of fact, to be determined by the evidence" and that "[t]he burden of proof was on the government to sustain the jurisdiction of the court by evidence as to the status of the deceased, and the question should have gone to the jury as one of fact, and not of presumption." *Id.* at 616–17, 16 S.Ct. 1168. In *Smith v. United States*, 151 U.S. 50, 14 S.Ct. 234, 38 L.Ed. 67 (1894), the Court characterized the victim's status as "a fact which the government was bound to establish.... [I]f [the government] failed to introduce any evidence upon that point, [the] defendant was entitled to an instruction [that the court had no jurisdiction]." *Id.* at 55, 14 S.Ct. 234.

In neither *Lucas* nor *Smith* was there any suggestion that the defendant had the burden of pleading the status of the victim,

---

2. An affirmative defense may impose various burdens on the defendant: (1) the burden of pleading ("the burden of introducing [a] defense for consideration"), Paul H. Robinson, 1 *Criminal Law Defenses* § 3(a), at 12 (1984); (2) the burden of production (the burden of "adduc[ing] sufficient evidence to ... support ... the presence of [a] defense"), *id.* § 3(b), at 15; or (3) the burden of persuasion (the burden of "convinc[ing] the tribunal of the existence of the facts" supporting the defense). *Id.* § 5(a), at 41.

3. Both cases were decided under a prior version of § 1152. At that time, the provision excluding Indian Indian crimes, crimes punished by tribal law, and crimes assigned to the tribe by treaty was set forth in a separate section. *See Cowboy*, 694 F.2d at 1233 (discussing R.S. §§ 2145 and 2146, enacted in 1873 and amended in 1875). The language setting forth these jurisdiction limitations is nearly identical to the language used in the current version of § 1152.

offering evidence of that status, or persuading the factfinder. Thus, when the decisions refer to the prosecution's obligation to prove the victim's status, they cannot reasonably be read as describing the rebuttal of an affirmative defense. Instead, these decisions treat the victim's status as an element—a constituent part of the crime that the government must raise in the indictment, submit to the jury, and prove at trial.

Two courts of appeals have reached the same conclusion. In *Hilderbrand v. United States*, 261 F.2d 354 (9th Cir.1958), the Ninth Circuit considered a defendant's motion to vacate a judgment pursuant to 28 U.S.C. § 2255 because the indictment alleged that he committed a murder on an Indian reservation but did not allege the status of either the victim or the defendant. Reversing the district court, the Ninth Circuit vacated the judgment and ordered the indictment dismissed. It reasoned that because "[t]he indictment did not allege that appellant or the victim of the accused was an Indian[,][*i]t thus failed to state that any basis for federal jurisdiction existed* in this case...." *Id.* at 356 (emphasis added).

In *United States v. Torres*, 733 F.2d 449 (7th Cir.1984), the Seventh Circuit addressed a defendant's challenge to instructions that failed to inform the jury that, in order to find him guilty of conspiring to commit murder in Indian country in violation of 18 U.S.C. §§ 1117 and 1152, it was required to find that the victim was a non-Indian. Citing *Lucas* and *Smith*, the court concluded that, "[f]or purposes of 18 U.S.C. § 1152, the Government had to prove not only that [the defendants] were Indians but also that the victim ... was a non-Indian." *Id.* at 457; *see also id.* at 454 (stating that, "[i]n order to prosecute under 18 U.S.C. § 1152, the Government must prove, as a jurisdictional requisite, that the crime was in violation of a Federal enclave law, *and* that the crime occurred between an Indian and a non-Indian within Indian country") (emphasis added).

*Hilderbrand* and *Torres* thus impose the burden of alleging the victim's status on the government—in the indictment and at trial. Just as the older Supreme Court decisions in *Lucas* and *Smith,* neither case suggests that the defendant bears the initial burden of raising this issue. Both cases indicate that the mere allegation that the defendant has committed a crime in Indian country is not sufficient to establish federal jurisdiction under § 1152.

In addition to these decisions, the policies of protecting state and tribal sovereignty support the view that the status of the victim is an element. *See McBratney,* 104 U.S. at 624 (concluding that a state's admission to the union upon equal footing with the original states provided it with criminal jurisdiction over a crime involving non-Indians); *United States v. Romero,* 136 F.3d 1268, 1270 n. 2 (10th Cir.1998) (noting that the § 1152 limitations "recognize and preserve tribal sovereignty over matters of central importance to tribal self-government"); Cohen, *supra,* at 290 (stating that, by excepting many offenses from § 1152, Congress "manifested a broad respect for tribal sovereignty, particularly in matters affecting only Indians"); Clinton, *supra,* at 522 (noting that § 1152 is "the successor of the first general federal jurisdictional statutes enacted for Indian lands" and that these statutes "prescribed *limited federal control* over the lands reserved for the Indians" and "generally reserved tribal sovereignty and jurisdiction over intratribal matters") (emphasis added). Requiring the government to allege the status of the victim in the indictment ensures that the grand jury found probable cause that the defendant committed a crime over which the federal court has jurisdiction. *See United States v. Dionisio,* 410 U.S. 19, 48, 93 S.Ct. 781,

35 L.Ed.2d 67 (1973) (Marshall, J., dissenting) (stating that "the very purpose of the grand jury process is to ascertain probable cause"); *United States v. Cabrera–Teran,* 168 F.3d 141, 143 (5th Cir.1999) (stating that "one of the central purposes of an indictment [is] to ensure that the grand jury finds probable cause that the defendant has committed each element of the offense, hence justifying a trial, as required by the Fifth Amendment"). In contrast, to deem an indictment sufficient when it does not allege the status of the victim would allow the federal government to charge either a state crime (if the victim and the defendant are non-Indians) or a tribal crime (if they are both Indians). Even if the crime was not an interracial one, an § 1152 prosecution could proceed under such an indictment until the issue was raised by the defendant. Such a prosecution would infringe the state and tribal interests that the Supreme Court and Congress have sought to protect. *See generally Ramah Navajo Chapter v. Lujan,* 112 F.3d 1455, 1460 (10th Cir.1997) (noting that "[f]ederal statutes are to be construed liberally in favor of Native Americans, with ambiguous provisions interpreted to their benefit").

Imposing the burden of alleging the status of the victim on the government rather than the defendant also comports with the usual practice in criminal prosecution. "[I]n ordinary criminal cases[,][the government] customarily is required to carry its burden of showing that specific events happened." *United States v. Kaluna,* 152 F.3d 1069, 1079, *reh'g granted, opinion withdrawn,* 161 F.3d 1225 (9th Cir.1998). Moreover, "the government, with its ready access to official files and records, and its superior ability to locate or track down individuals, is in a better position [than the defendant] to obtain the testimony of victims of, or percipient-witnesses to, past offenses." *Id.; see also United States v. McArthur,* 108 F.3d 1350, 1355 (11th Cir.1997) (observing that "courts determining whether a statutory exception is an element of the crime or an affirmative defense often consider whether the government or the defendant is in the best position to prove facts necessary to trigger the exception"). In a crime such as arson, there may be many potential victims: landlords, tenants, and other occupants of the house. The terms of § 1152 do not suggest that Congress took the unusual step of requiring the defendant in a criminal case to identify the victims of the crime.

## B. The Status of the Defendant

Allocating the burden of alleging the status of the defendant presents a closer question. In both *Lucas* and *Smith* there was no dispute as to each defendant's Indian status. *See Lucas,* 163 U.S. at 612, 16 S.Ct. 1168 (stating that it was proven at trial that the defendant was an Indian); *Smith,* 151 U.S. at 51, 14 S.Ct. 234 (stating that the defendant admitted to being an Indian and that the only issue was whether "the undisputed testimony did not also show [the murder victim] to have been an Indian"). As a result, the Supreme Court did not discuss the burden of alleging that issue. Moreover, in contrast to the victim's status, the government's superior resources will not necessarily provide it with an unfair advantage in alleging or proving the relevant facts. Finally, one court of appeals has relied on the defendant's access to information about his or her own status to conclude that "the Government need not allege the non-Indian status of the defendant in an indictment under section 1152, nor does it have the burden of going forward on that issue."[4] *United*

---

4. The Ninth Circuit added, however, that "[o]nce the defendant properly raises the issue of his Indian status, then the ultimate

*States v. Hester,* 719 F.2d 1041, 1043 (9th Cir.1983).

Nevertheless, we are not persuaded that the status of the defendant should be treated differently from the status of the victim. Most importantly, the status of the defendant may be just as significant in determining whether a federal court has jurisdiction over the crime of arson in Indian country under §§ 81 and 1152 as the status of the victim. Thus, in a case in which the government contends that the victim is a non-Indian, the status of the defendant will determine whether a federal court or a state court has jurisdiction. *See McBratney,* 104 U.S. at 621–24 (holding that, under § 1152, the state has exclusive jurisdiction over a crime involving two non-Indian citizens). In a case in which the government contends that the victim is an Indian, the status of the defendant will determine whether the crime may be prosecuted under § 1152 or under another statute.[5] Additionally, unlike other instances in which courts have imposed upon the defendant the initial burden of pleading an issue, it is feasible for the government to allege the status of the defendant. *Compare* Robinson, *supra,* § 3(a), at 14 (noting that, in perjury cases, the defendant is usually required to plead the defense of retraction because "it would be difficult, if not impossible, for the prosecution to show the absence of a retraction unless the defendant first alleged when and how he made [a] retraction"), *with*

*Romero,* 136 F.3d at 1269–70 (10th Cir. 1998) (observing that the indictment alleged that the defendant was an Indian and that the victims were non-Indians); *see also United States v. Williamson,* No. 96–7111, 1997 WL 191492 (10th Cir. Apr.27, 1997) (noting that the indictment alleged that "the defendant ..., a non-Indian, at a place within Indian Country ... did willfully and maliciously set fire to and burn a dwelling structure ... in violation of Title 18, United States Code, Sections 2, 81, 1151, and 1152"). Finally, as noted in the panel opinion, the reasoning of the Ninth Circuit in *Hester* is not persuasive.[6] *See Prentiss,* 206 F.3d at 972–974.

### C. Statutory Interpretation

In concluding that the status of the victim and the defendant are not elements, Judge Baldock relies exclusively on the plain language of the statute. Because § 1152's jurisdictional scheme is set forth in two separate paragraphs, he maintains, the first paragraph grants federal jurisdiction over Indian country while the second one establishes exceptions that "a defendant must raise in the first instance." Op. at 989 (Baldock, J., dissenting).

Judge Baldock's interpretation is based on the following principle:

[A]n indictment ... founded on a general provision defining the elements of an offense, or of a right conferred, need not

---

burden of proof remains, of course, upon the Government." *Hester,* 719 F.2d at 1043.

**5.** As noted in the panel opinion, the Indian Major Crimes Act, 18 U.S.C. § 1153, extends federal jurisdiction over fourteen specific offenses committed by Indians in Indian country, including arson. *See Prentiss,* 206 F.3d at 968 n. 8 (discussing the Major Crimes Act). Thus, if both the victim and the defendant were Indians, the instant case could proceed under § 1153.

**6.** The indictment in *Hester* contained a crucial allegation that the indictment in this case omits: "that the victim was an Indian." *Hester,* 719 F.2d at 1042. Moreover, *Hester* does not discuss the Ninth Circuit's earlier decision in *Hilderbrand.* Thus, even after *Hester,* it appears that an indictment that "did not allege that appellant *or* the victim of the accused was an Indian .... fail[s] to state that any basis for federal jurisdiction exist[s]." *Hilderbrand,* 261 F.2d at 357 (emphasis added).

negative ... an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it.

*McKelvey v. United States,* 260 U.S. 353, 357, 43 S.Ct. 132, 67 L.Ed. 301 (1922).

■ In our view, this principle is insufficient to excuse the government from alleging the statuses of the victim and the defendant in the indictment. As the Eleventh Circuit observes, *McKelvey's* general provision/proviso dichotomy is only one interpretative aid among several that should be applied in parsing statutes that define offenses. *See McArthur,* 108 F.3d at 1354 (characterizing *McKelvey* and another rule of construction as "merely interpretive aids" to be considered along with "other indications of legislative will evident in the statute"); *United States v. Bailey,* 277 F.2d 560, 562–64 (7th Cir.1960) (stating that the purpose of the statute must be considered in determining whether the government is required to allege that the defendant's conduct does not fall within an exception). Thus, in *United States v. Cook,* 84 U.S. (17 Wall.) 168, 21 L.Ed. 538 (1872), the Supreme Court observed that some "exceptions" are so closely intertwined with the definition of the offense that the government must allege them in the indictment:

> Where a statute defining an offence contains an exception, in the enacting clause of the statute, which is *so incorporated with the language defining the offence that the ingredients of the offence cannot be accurately and clearly described if the exception is omitted,* the rules of good pleading require that an indictment founded upon the statute must allege enough to show that the accused is not within the exception ... as it is universally true that no indictment is sufficient if it does not accurate-

ly and clearly allege all the ingredients of which the offense is composed.

*Id.* at 173–74 (emphasis added). That principle may apply even when the exception is set forth in a subsequent clause or section of the statute. *Id.* at 174–75 (noting that an exception may be "clothed in such language ... to define the offence [ ] that it would be impossible to frame the actual statutory charge in the form of an indictment with accuracy, and the required certainty, without an allegation showing that the accused was not within the exception contained in the subsequent clause, section, or statute"); *see also McArthur,* 108 F.3d at 1353 (discussing *McKelvey* and stating that "[a] second, but related, rule is that where one can omit the exception from the statute without doing violence to the definition of the offense, the exception is more likely an affirmative defense"); *Nicoli v. Briggs,* 83 F.2d 375, 379 (10th Cir.1936) (stating that *Cook* holds "that if it is impossible to frame the statutory charge without negativing the exception, then it should be negatived" and that *Cook,* "read as whole, *does not appear to be at variance with the later case of McKelvey* ") (emphasis added); *United States v. Kelly,* 63 F.Supp. 977, 978 (N.D.Ind.1945) (rejecting "a mechanical test" that relies exclusively on whether an "exception" is set forth in an enacting clause or a proviso).

The interpretive principle set forth in *Cook* applies to § 1152: "the ingredients of the offence cannot be accurately and clearly described if the exception is omitted." *Cook,* 84 U.S. at 173. Thus, in describing the facts necessary to support a conviction under § 1152, the overwhelming majority of court decisions assess the statuses of the victim and the defendant. *See, e.g., United States v. Ramsey,* 271 U.S. 467, 468, 46 S.Ct. 559, 70 L.Ed. 1039 (1926) (noting that the defendants were two white men and that the victim was an Osage Indian); *Lucas,* 163 U.S. at 612, 16 S.Ct.

1168 (stating that the defendant was an Indian but that the victim was not one); *Romero*, 136 F.3d at 1269 (stating that the defendant, "an Indian, was arrested and indicted for aggravated assault on an Indian reservation against two non-Indians"). Indeed, we have been unable to find a single case that ends the jurisdictional inquiry as Judge Baldock would allow—by finding federal jurisdiction merely because the crime occurred in Indian country. *See* Op. at 987 (Baldock, J., dissenting) (stating that "an allegation that the crime of arson in violation of § 81 occurred in Indian country in my opinion is sufficient to satisfy § 1152"). Scholars agree that consideration of the status of the victim and the defendant is a fundamental part of the jurisdictional inquiry. *See, e.g.,* David H. Getches and Charles F. Wilkinson, *Cases and Materials on Federal Indian Law* 412–15 (2d ed.1986) (setting forth an analytical approach to criminal jurisdiction in Indian country, stating that "[t]he federal statutory scheme is based in large part on racial identity as an Indian or non-Indian," and listing the determination of whether the crime was committed by or against an Indian as part of the necessary inquiry); Cohen, *supra,* at 301 n. 157 (contrasting § 1152 with 28 U.S.C. § 1153 in that the former *"requires additional allegations and proof that the crime was interracial"*) (emphasis added); Clinton, *supra,* at 526 (describing the reach of § 1152 by stating that "an Indian [must be] involved").[7]

■■■ Accordingly, Supreme Court authority, decisions of other circuits, policies underlying § 1152, practicalities of criminal prosecution, and established principles of statutory construction support the conclusion of the panel opinion. Thus, the Indian/non–Indian statuses of the victim and the defendant are essential elements of the crime of arson in Indian country under 18 U.S.C. §§ 81 and 1152. The government must allege them in the indictment.[8]

7. Interestingly, the prosecutor in this case was also unable to describe the basis for federal jurisdiction without referring to Indian and non-Indian status. When asked before opening statements why the case was not prosecuted in tribal court, she responded, "Mr. Prentiss is not an Indian, nor does the state have jurisdiction because the harmed party is Domingo Vigil, a member of the pueblo who owns the house, so the federal government has the duty to prosecute the case." Rec. vol. III, at 123. Thus, the government did not adopt Judge Baldock's view that the federal court had jurisdiction merely because the crime occurred in Indian country.

8. The government also argues that, in characterizing the statuses of the victim and the defendant, we should consider the other limitations on federal jurisdiction set forth in the second paragraph of § 1152—that federal jurisdiction does not extend to "any Indian committing any offense in the Indian country who has been punished by the local law of the tribe" or "to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively." 18 U.S.C. § 1152. According to the government, the first of these limitations is a double jeopardy protection, and defendants are usually required to invoke a prior prosecution as a defense. Similarly, the government argues, defendants are usually required to raise the issue of immunity provided by treaty. The government maintains that, because it is the defendant's burden to raise these limitations, the defendant should also be required to raise the victim's status and his or her own status as defenses.

We are not persuaded by this argument. Although this case does not require us to construe these other jurisdictional limitations, we note that in determining whether a provision of a statute constitutes an element or an affirmative defense, courts have considered a variety of factors, including: (1) the breadth or narrowness of the provision; (2) whether "one can omit the exception from the statute without doing violence to the definition of the offense"; (3) the legislative history; and (4) "whether the defendant or the government is better situated to adduce evidence tending to prove or disprove the applicability of the exception." *McArthur,* 108 F.3d at 1353.

BALDOCK, Circuit Judge, joined by TACHA, Chief Judge, and BRORBY, KELLY, BRISCOE, and MURPHY, Circuit Judges.

### III.

■ We next consider the issue of whether the indictment's failure to allege the Indian/non–Indian statuses of Defendant and his victim deprived the district court of subject matter jurisdiction, or instead, is subject to harmless error review. Relying on *United States v. Brown*, 995 F.2d 1493 (10th Cir.1993), and *United States v. Smith*, 553 F.2d 1239 (10th Cir. 1977), Defendant argues that "the failure of the indictment to allege all the essential elements of the offense ... is a jurisdictional defect requiring dismissal, despite citation of the underlying statute in the indictment." *Brown*, 995 F.2d at 1505. According to Defendant, "the absence of prejudice to the defendant does not cure what is necessarily a substantive, jurisdictional defect in the indictment." *Smith*, 553 F.2d at 1242.

Bound by prior precedent, a divided panel of this Court agreed, holding that "the complete omission of an essential element of the crime [from the indictment] ... is a fundamental jurisdictional defect that is not subject to harmless error analysis." *Prentiss*, 206 F.3d at 975. This was so, the panel reasoned, because absent an indictment that alleged each essential element of the crime, the Court could not be certain the grand jury made the probable cause findings necessary to sustain the indictment. *Id.* at 976; *see also United*

*States v. Peterman*, 841 F.2d 1474, 1477 (10th Cir.1988).

Upon en banc consideration, we now vacate that portion of our panel opinion which declined to review for harmless error the omission of an essential element from the indictment. *Id.* at 974–77. Contrary to our prior precedents, we hold that the failure of an indictment to allege an essential element of a crime does *not* deprive a district court of subject matter jurisdiction; rather, such failure is subject to harmless error review. To the extent that this Court's prior decisions, including *Brown* and *Smith*, hold otherwise, we overrule them.

### A.

In *Madsen v. United States*, 165 F.2d 507 (10th Cir.1947), we established that under the new form of pleading, an "indictment must allege the essential elements of the offense but mere forms of averment may be disregarded." *Id.* at 509. Since then, we have repeatedly recognized that to ensure compliance with the Fifth Amendment's grand jury guarantee, U.S. Const. amend. V, an indictment should allege each essential element of the crime charged. *E.g., United States v. Gama–Bastidas*, 222 F.3d 779, 785 (10th Cir. 2000). Because of our prior view that an indictment's failure to allege an essential element of a crime was jurisdictional, a defendant could raise a motion to dismiss based on such failure at any stage of the proceedings with impunity. *But see United ed States v. Bolton*, 68 F.3d 396, 400–01

---

Consideration of these factors may lead to different conclusions regarding each of the limitations set forth in the second paragraph of § 1152. Thus, the fact that double jeopardy is typically an issue that must be raised by the defendant does not establish that, under § 1152, the statuses of the victim and the defendant are defenses.

Additionally, the history of § 1152 reveals that Congress added, deleted, combined, and separated these jurisdictional limitations on many occasions. *See Cowboy*, 694 F.2d at 1228, 1232–33 (discussing the history of § 1152); Cohen, *supra*, at 287–300 (same). Thus, the parallel construction on which the dissent insists is not compelled by the wording of the statute.

(10th Cir.1995) (upholding defendant's conviction after harmless error review where indictment failed to allege an essential element of the crime). We now revisit that view.

■ That a court may not adjudicate a criminal prosecution without subject matter jurisdiction is beyond doubt. Courts' recurring reference to the elements of a crime as "jurisdictional" to justify dismissal of an indictment which fails to allege an element, however, is misplaced. *E.g., United States v. Tran,* 234 F.3d 798, 805–810 (2d Cir.2000); *United States v. Spinner,* 180 F.3d 514, 515–17 (3d Cir.1999). An indictment's failure to allege an element of a crime "is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, *i.e.,* a court's constitutional or statutory power to adjudicate a case...." *United States v. Martin,* 147 F.3d 529, 532 (7th Cir.1998). As Judge Easterbrook aptly explained: "Subject matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231.... That's the beginning and the end of the 'jurisdictional' inquiry." *Hugi v. United States,* 164 F.3d 378, 380 (7th Cir.1999).[9]

Elements of the crime of arson in Indian country under 18 U.S.C. §§ 81 & 1152, such as the Indian/non–Indian statuses of Defendant and his victim, are jurisdictional only in the sense that in the absence of those elements, no federal crime exists. *See Martin,* 147 F.3d at 531–32 (noting that so-called "jurisdictional" elements are " 'jurisdictional' only in the shorthand sense that without that nexus, there can be no federal crime"). If the Government alleged, but failed to prove those elements, we would not say the district court was deprived of subject matter jurisdiction to hear the case; rather we would say Defen-

dant was entitled to acquittal. Similarly, the Government's failure to allege the Indian/non–Indian statuses of Defendant and his victim in the indictment did not deprive the district court of subject matter jurisdiction to hear the case, although Defendant ultimately may be entitled to dismissal of the indictment. To hold otherwise would turn questions of criminal statutory construction and the sufficiency of indictments into unwarranted jurisdictional inquiries.

The indictment in this case sought to charge Defendant with the federal crime of arson in Indian country. *See* 18 U.S.C. §§ 81 & 1152. Therein, the Government set forth what it believed to be the essential elements of the crime, specifically alleging that those elements violated §§ 81 and 1152. Defendant did not challenge the indictment's sufficiency at any time in the district court. *Compare United States v. Du Bo,* 186 F.3d 1177, 1179 (9th Cir.1999) (holding that "if properly challenged before trial," an indictment's failure to allege an element of the offense constitutes reversible error), *with United States v. Woodruff,* No. 98–10358, 1999 WL 776213 at *1 (9th Cir. Sept.29, 1999) (unpublished) (refusing to extend *Du Bo* where defendant failed to timely challenge the indictment). Nor did Defendant ever seek a bill of particulars pursuant to Fed.R.Crim.P. 7(f). Defendant obviously had no questions concerning the federal charges against him, and neither do we. Accordingly, we are satisfied the district court had subject matter jurisdiction over the indictment in this case.

**B.**

■ Because an indictment's failure to allege an essential element of a crime is

9. Section 3231 provides in relevant part: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231.

not jurisdictional, we must discern what standard of review applies when a defendant fails to timely challenge such an indictment. To be sure, a defendant cannot waive the right to challenge an indictment based upon its failure to charge an offense. Fed.R.Crim.P. 12(b)(2). We must, however, as a general rule liberally construe an indictment subject to a belated challenge in favor of validity. *See Bolton,* 68 F.3d at 400. This is because all trial participants must be encouraged to seek a fair and accurate trial the first time around. "The very limited resources of our judicial system require that such challenges be made at the earliest possible moment in order to avoid needless waste." *United States v. Edmonson,* 962 F.2d 1535, 1542 (10th Cir. 1992). Our words nearly four decades ago remain true today:

> [A]fter a verdict ... every intendment must be indulged in support of the indictment ... and such a verdict ... cures mere technical defects unless it is apparent they have resulted in prejudice to the defendant. *Prejudice to the defendant is, of course, a controlling consideration in determining whether an indictment ... is sufficient.*

*Clay v. United States,* 326 F.2d 196, 198 (10th Cir.1963) (emphasis added).

In both *Brown,* 995 F.2d at 1504, and *Smith,* 553 F.2d at 1240–42, however, we declined to consider whether defendants suffered any prejudice as a result of the defective indictments. Instead, we effectively, though not expressly, treated an indictment's failure to allege an essential element of a crime as structural error subject to automatic reversal. Structural error occurs in only a *"very limited* class of cases," *Johnson v. United States,* 520 U.S. 461, 461–468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (emphasis added), and "necessarily render[s] a trial fundamentally unfair." *Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). This is because structural errors "deprive

defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence.'" *Neder v. United States,* 527 U.S. 1, 8–9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting *Rose,* 478 U.S. at 577–78, 106 S.Ct. 3101).

Nevertheless, most recently in *Neder,* the Supreme Court recognized that "most" constitutional errors can be harmless: " 'If the defendant had counsel and was tried by an impartial adjudicator, there is a *strong* presumption that any other constitutional errors that may have occurred are subject to harmless-error analysis.'" *Id.* at 8, 119 S.Ct. 1827 (quoting *Rose,* 478 U.S. at 579, 106 S.Ct. 3101) (emphasis added). Such a presumption is proper because " '[r]eversal of error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.'" *Johnson,* 520 U.S. at 470, 117 S.Ct. 1544 (1997) (quoting R. Traynor, *The Riddle of Harmless Error* 50 (1970)). Importantly, the harmless error doctrine " 'recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial.'" *Neder,* 527 U.S. at 18, 119 S.Ct. 1827 (internal ellipses omitted) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

To date, the Supreme Court has classified only two types of grand jury related errors as structural, both involving discrimination in the selection of grand jurors. *Vasquez v. Hillery,* 474 U.S. 254, 260–64, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination); *Ballard v. United States,* 329 U.S. 187, 193, 67 S.Ct. 261, 91 L.Ed. 181 (1946) (sex discrimination). Otherwise, the Court has "see[n] no reason not to apply [harmless error analy-

sis] to 'error, defects, irregularities or variances' occurring before a grand jury just as [it has] applied it to such error occurring in the criminal trial itself." *United States v. Mechanik*, 475 U.S. 66, 71–72, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986). In *Mechanik*, the Court held harmless the government's violation of Fed.R.Crim.P. 6(d) relating to the presence of witnesses before a grand jury. The Court explained that "the petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted" *Id.* at 67, 106 S.Ct. 938.[10]

Furthermore, despite the Fifth Amendment's requirement that the Government prove each and every element of a crime beyond a reasonable doubt, *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and the Sixth Amendment's requirement that a jury, rather than a judge, reach the requisite finding of guilty, *Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Court in *Neder* held that the failure to instruct the jury on every element of an offense "does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder*, 527 U.S.

at 9, 119 S.Ct. 1827 (emphasis in original). To us, a defendant's right to have a petit jury find each element of the charged offense beyond a reasonable doubt is no less important than a defendant's right to have each element of the same offense presented to the grand jury. If denial of the former right is subject to harmless error analysis, we believe denial of the latter right must be as well. *See United States v. Mojica–Baez*, 229 F.3d 292 (1st Cir. 2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 2215, 150 L.Ed.2d 209 (2001) ("[W]e see no reason why harmless error review should not apply to the failure to include an element in an indictment that otherwise provided the defendants with fair notice of the charges against them.").[11]

We conclude that the Government's failure to allege in the indictment the Indian/non–Indian statuses of Defendant and his victim is not "so intrinsically harmful as to require automatic reversal ... without regard to ... [its] effect on the outcome" of the case. *Neder*, 527 U.S. at 7, 119 S.Ct. 1827. Rather, to determine whether the omission of these elements from the indictment requires reversal, this Court must apply a harmless error analysis first established in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and recently reaffirm-

**10.** *Mechanik* explained *Vasquez* and *Ballard* on the basis that "discrimination in the selection of grand jurors is so pernicious, and other remedies so impractical, that the remedy of automatic reversal was necessary as a prophylactic means of deterring grand jury discrimination in the future...." 475 U.S. at 71 n. 1, 106 S.Ct. 938.

**11.** Unlike the dissent, we do not believe *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), dictates a contrary result in this instance. In *Stirone*, the indictment adequately charged Defendant with extortion through transporting sand in interstate commerce in violation of the Hobbs Act. *See also Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

Based upon the evidence and improper jury instructions at trial, however, the jury may have convicted defendant of a different Hobbs Act violation, i.e., extortion through transporting steel in interstate commerce. The court held that defendant could not "be tried on charges that are not made in the indictment." *Stirone*, 361 U.S. at 217, 80 S.Ct. 270. In contrast, the indictment in this case, although it failed to expressly set forth all the elements of the crime, sought to charge Defendant with the sole crime for which the jury convicted him, i.e., setting fire to a dwelling within the confines of the Tesuque pueblo in violation of 18 U.S.C. §§ 81 & 1152. This is not a case where the indictment charged Defendant with one crime and the jury convicted him of another.

ed in *Neder*, 527 U.S. at 15, 119 S.Ct. 1827: "Whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' "[12]

Accordingly, this cause is returned to the original appellate panel for application of harmless error review to the indictment's failure to allege the Indian/non-Indian statuses of Defendant and his victim, and, if necessary, resolution of the remaining issues Defendant raises on appeal.

**SO ORDERED.**

BALDOCK, Circuit Judge, joined by TACHA, Chief Judge, and BRORBY, and PAUL KELLY, Jr., Circuit Judges, dissenting as to Part II.

The Court construes the "Indian versus Indian" exception contained in the second paragraph of the Indian Country Crimes Act, 18 U.S.C. § 1152, together with the "non-Indian versus non-Indian" exception to the Act spawned by *United States v. McBratney*, 104 U.S. 621, 26 L.Ed. 869 (1881), to require the Government to allege in the indictment that either Defendant was an Indian and his victim was not, or vice versa. Because the Court's holding—that the Indian/non–Indian statuses of Defendant and his victim are essential elements of the crime of arson in Indian country which the Government must allege in the indictment—strikes me as an imprudent construction of § 1152, I dissent.

I.

The federal arson statute, 18 U.S.C. § 81, Ch. 645, 62 Stat. 688 (1948) (as amended), a federal enclave law, federalizes the crime of arson "within the territorial jurisdiction of the United States." It provides in relevant part: "Whoever within the ... territorial jurisdiction of the United States, willfully and maliciously sets fire to or burns, or attempts to set fire to or burn any building ... shall be imprisoned...." The first paragraph of the Indian Country Crimes Act, 18 U.S.C. § 1152, Ch. 645, 62 Stat. 757 (1948), extends application of federal enclave laws, and thus § 81, to Indian country: "[T]he general laws of the United States as to punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States ... shall extend to Indian country."

The second and only remaining paragraph of § 1152 sets forth three provisos which restrict application of § 1152's first paragraph:

This section shall not extend [1] to offenses committed by one Indian against the person or property of another Indian, nor [2] to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or [3] to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

*Id.* A fourth, judicially-created proviso excepts from § 1152's extension of federal enclave laws to Indian country crimes committed by a non-Indian against the person or property of another non-Indian. *See McBratney*, 104 U.S. at 621–24.[13]

---

**12.** Because Fed.R.Crim.P. 12(b)(2) requires us to consider "at any time during the pendency of the proceedings" a challenge to an indictment for failure to state an offense, we believe the harmless error rather than plain error standard of review should apply to a belated challenge in all cases. *See* Fed. R.Crim.P. 52.

**13.** Section 1152's earliest predecessors are late eighteenth and early nineteenth century statutes and treaties providing federal court jurisdiction over criminal offenses which non-Indians committed against Indians within tribal territory. *See* Felix S. Cohen, *Handbook of Federal Indian Law*, 287–88 (1982 ed.). The primary purpose of these laws was

In distinguishing between the requirement of § 1152's first paragraph, as defined by Congress, and exceptions or defenses thereto contained in § 1152's second paragraph, I am guided by established principles of statutory construction.[14] First, I look to the language and structure of the statute which is the principal means of ascertaining congressional intent. *See United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (where a statute's language is plain, "the sole function of the court is to enforce it according to its terms") (internal quotations omitted); *United States v. Thunder Hawk*, 127 F.3d 705, 706–09 (8th Cir.1997) (holding, based upon the plain language of 18 U.S.C. § 1152, that the "Indian versus Indian *exception*" to § 1152 did not apply to the "victimless" crime of driving while intoxicated) (emphasis added). Because the language and structure of § 1152

are clear and unambiguous, my inquiry there ends.

II.

The Court concludes that the first proviso of § 1152's second paragraph, excepting from the statute's reach crimes committed by one Indian against another Indian, together with the Supreme Court's decisional rule that a state rather than federal court should exercise jurisdiction over a crime committed by a non-Indian against a non-Indian in Indian country, *see New York v. Martin*, 326 U.S. 496, 66 S.Ct. 307, 90 L.Ed. 261 (1946) (reaffirming *McBratney*), interact to make the Indian/non Indian statuses of a defendant and victim elements of the crime of arson in Indian country. In my opinion, the meaning which the Court ascribes to § 1152 requires (1) a disingenuous interpretation of its language, (2) a disregard for its structure, and (3) a misunderstanding of *McBratney*. In the end, the Court's fundamental analytical error lies in its mistak-

to protect Indians from their hostile white neighbors. *See* Robert N. Clinton, *Criminal Jurisdiction Over Indian Lands: A Journey Through a Jurisdictional Maze*, 18 Ariz. L.Rev. 503, 521 n. 88 (1977). An Act of March 3, 1817, Ch. 92, § 2, 3 Stat. 383, provided for federal enclave jurisdiction over crimes committed both by Indians and non-Indians except for crimes "by one Indian against another, within any Indian boundary." Since that time, the law has undergone numerous revisions until its present codification as 18 U.S.C. § 1152 by an Act of June 25, 1948, ch. 645, 62 Stat. 653, 757. *See United States v. Cowboy*, 694 F.2d 1228, 1232–33 (10th Cir. 1982) (setting forth the history of § 1152). The primary purpose of § 1152 is to recognize the federal government's trust responsibility towards Indians by extending federal law enforcement to Indian country. *See* Clinton, *supra* at 521 n. 88.

**14.** Federal crimes "are solely creatures of statute." *Staples v. United States*, 511 U.S. 600, 604, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). Subject to constitutional limitations

not implicated here, Congress, not a federal appellate court, is authorized to define the elements of a federal criminal offense. *Whalen v. United States*, 445 U.S. 684, 689 & n. 3, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). "[W]ithin our federal constitutional framework the legislative power . . . to define criminal offenses . . . resides wholly with the Congress." *Id.* As part of its responsibility to define the elements of federal crimes, Congress has sole authority to define the limits of the lower federal courts' criminal jurisdiction over those crimes.

> The judicial power of the United States is . . . dependent for its distribution and organization, and for the modes of its exercise, entirely upon the action of Congress, who possess the sole power of investing [inferior federal courts] with jurisdiction either limited, concurrent, or exclusive, and of withholding from them in the exact degree and character which to Congress may seem proper for the public good.

*Palmore v. United States*, 411 U.S. 389, 401, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973).

en conflation of fact-based exceptions or defenses to § 1152's requirement that the crime occur in Indian country with the premise that the indictment utterly fails to allege a federal crime because it does not specify the Indian/non–Indian statuses of Defendant or his victim.

To be sure, § 1152 extends the criminal jurisdiction of the federal courts provided for in 18 U.S.C. § 3231 to federal enclave crimes occurring within Indian country. No one disputes that under § 1152 an element of the crime of arson which the Government must allege is that it occurred in Indian country (which the indictment in this case plainly alleges). Yet nothing prohibits Congress from setting forth in the same statute fact-based exceptions to the statute's criminal element based on notions of Indian sovereignty which, matters of ultimate proof aside, a defendant must initially raise as a bar to suit. *See United States v. Hester*, 719 F.2d 1041, 1042–43 (9th Cir.1983).[15] The most natural reading of the Indian Country Crimes Act, 18 U.S.C. § 1152, and the federal arson statute, 18 U.S.C. § 81, is that the phrase "shall extend to Indian country" in § 1152 satisfies the requirement that the arson occur "within the territorial jurisdiction of the United States" as required by § 81. Thus, an allegation that the crime of arson in violation of § 81 occurred in Indian

country in my opinion is sufficient to satisfy § 1152.

To reach a contrary result, the Court relies on two nineteenth century Supreme Court decisions, *Smith v. United States*, 151 U.S. 50, 54–55, 14 S.Ct. 234, 38 L.Ed. 67 (1894); *Lucas v. United States*, 163 U.S. 612, 616–17, 16 S.Ct. 1168, 41 L.Ed. 282 (1896), which stand for the proposition that the Government has the burden of proving the Indian/non–Indian statuses of a defendant and victim under § 1152.[16] What the Court fails to recognize, however, is that the question of who ultimately bears the burden of persuasion, and how substantial that burden is—once a defendant raises the question as to the Indian/non–Indian statuses of the defendant and victim—is a matter wholly separate from the pleading issue before the en banc Court. *See United States v. Steele*, 147 F.3d 1316, 1320 (11th Cir.1999). Nothing is unusual about requiring the prosecution to disprove a defense, even beyond a reasonable doubt, once a defendant has come forward with some evidence as to the presence of the defense. *See Patterson v. New York*, 432 U.S. 197, 207–09 & nn. 10–11, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (noting that "the trend over the years appears to have been to require the prosecution to disprove affirmative defenses beyond a reasonable doubt").

**15.** In *Hester*, defendant was charged with sexually-related crimes against Indian children on the Navajo Reservation. On appeal, defendant challenged the indictment's failure to allege an essential jurisdictional element of the crime under § 1152, *i.e.*, his non-Indian status. Construing § 1152, the Ninth Circuit rejected defendant's challenge.

We accordingly hold that the Government need not allege the non-Indian status of the defendant in an indictment under § 1152, nor does it have the burden of going forward on that issue. Once the defendant properly raises the issue of his Indian sta-

tus, then the ultimate burden of proof remains, of course, upon the Government. *Hester*, 719 F.2d at 1043.

**16.** *See also United States v. Torres*, 733 F.2d 449 (7th Cir.1984). The sufficiency of the indictment was not at issue in *Torres*. Rather, the court held the district court erred when it failed to instruct the jury the Government had the burden of proving as a "jurisdictional requisite" that the crime occurred between an Indian and non-Indian in Indian country. *Torres*, 733 F.2d at 454, 457–58. The court ultimately concluded that the error was harmless.

If I were to construe § 1152, as does the Court, to require the Government to plead the first proviso of § 1152's second paragraph in the indictment as well as the *McBratney* exception, namely that (1) either the defendant or victim was an Indian and the other was not, I would have no choice but to construe § 1152 to require the Government to plead the second and third provisos of the statute's second paragraph as well, namely that (2) the defendant is not an Indian who has been punished by the local law of the tribe, and (3) exclusive jurisdiction over the charged offense has not been secured to the Indian tribe by treaty stipulation. The Court provides no sound reason to construe the first proviso of § 1152's second paragraph in a manner different from the second and third provisos.

The Court's frail attempt to explain within the confines of a remote footnote why it might construe these latter two provisos differently than the first stands the language and structure of § 1152 on their head. *See* Court's Op. at 980–81 n. 8. The Court simply ignores the obvious— that all three provisos are conjoined in the same distinct clause apart from § 1152's requirement that the crime occur in Indian country, and the language and structure of § 1152 draw no distinction between the three. The Court claims that "the ingredients of the offence cannot be accurately and clearly described if the [interracial] exception is omitted." *Id.* at 979 (internal quotations omitted). But that simply begs the question of what "ingredients" constitute the offense. After today, this Court may rest assured that good criminal defense attorneys will demand allegations in a § 1152 indictment negating all three exceptions to § 1152's "Indian country" requirement.

Since at least 1882, the Supreme Court has recognized that where provisos or exceptions appear in a distinct clause of a criminal statute, the Government need not allege in an indictment that a defendant does not come within the provisos or exceptions to the statute. *United States v. Britton,* 107 U.S. 655, 670, 2 S.Ct. 512, 27 L.Ed. 520 (1882). In *McKelvey v. United States,* 260 U.S. 353, 357, 43 S.Ct. 132, 67 L.Ed. 301 (1922), the Court emphasized the point:

> By repeated decisions it has come to be a settled rule ... that an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it.

*Accord United States v. Santos–Riviera,* 183 F.3d 367, 370–71 (5th Cir.1999) (relying on the above rule of criminal statutory construction to hold that neither the citizenship status of the offender nor victim was an essential element of hostage taking under 18 U.S.C. § 1203(b)(2)). Under the Supreme Court's established guidepost for distinguishing criminal statutory elements from exceptions, a crime committed by one Indian against another Indian constitutes an exception to the right conferred on federal courts by § 1152's extension of federal enclave laws to Indian country.

Furthermore, unlike the Court, I find no basis in § 1152's language and structure to support a conclusion that the respect for state rights recognized in *McBratney, i.e.,* that a crime committed by a non-Indian against a non-Indian within Indian country is a matter better left to state courts, combined with § 1152's exception for offenses committed by one Indian against another Indian, together establish that the Indian/non–Indian statuses of a defendant and victim are elements of the crime of

arson under §§ 81 & 1152. The Court in *McBratney* did not even purport to construe the applicable statute and its ruling finds no basis whatsoever in the language of § 1152 or its predecessor acts. Rather, in *McBratney* (and subsequent cases, namely *Draper v. United States*, 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419 (1896) and *Martin*, 326 U.S. at 496, 66 S.Ct. 307), "[t]he Court paid scant attention to the language of § 1152, relying instead on the inherent jurisdiction exercised by the states over Indian lands within their borders as a consequence of their admission to the Union...." Clinton, *supra* at 525; *see also* Cohen, *supra* at 298 (noting that "[t]he reasoning of the *McBratney* decision is doubtful, and it is unlikely that the same conclusion would be reached today in a case of first impression").

The clear language and structure of § 1152 compels me to conclude as a matter of statutory construction that the Indian/non–Indian statuses of a defendant and victim are *not* elements of the crime of arson within Indian country under 18 U.S.C. §§ 81 & 1152. Rather, in my opinion, the statuses of a defendant and victim constitute exceptions to § 1152's extension of federal enclave laws to Indian country which a defendant must raise in the first instance.

HENRY, joined by SEYMOUR, EBEL, and LUCERO, Circuit Judges, dissenting, as to Part III.

Overruling our prior decisions in *United States v. Brown*, 995 F.2d 1493, 1505 (10th Cir.1993) and *United States v. Smith*, 553 F.2d 1239, 1242 (10th Cir.1977), the majority concludes that an indictment's failure to allege the essential elements of an offense—a violation of the Fifth Amendment—may constitute harmless error. Because *Brown* and *Smith* properly apply Supreme Court precedent, I would not overrule them. Instead, I would follow the rule that "the failure of the indictment to allege all the essential elements of an offense ... is a jurisdictional defect requiring dismissal." *Brown*, 995 F.2d at 1505. As the indictment in this case failed to allege an essential element of a § 1152 violation (the Indian/non–Indian status of the victim and the defendant), I would vacate Mr. Prentiss's conviction and require the government to re-indict properly, as it did in *United States v. Romero*, 136 F.3d at 1268, 1270 (10th Cir.1998).

*Brown* and *Smith* are controlled by *Stirone v. United States* 361 U.S. 212, 216, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). There, the Supreme Court vacated a conviction based upon an allegation not charged in the indictment. The Court applied the principle that "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Id.* at 215–16, 80 S.Ct. 270. It reasoned as follows:

> If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed.
>
> ....
>
> [A]fter the indictment [is] changed it [i]s no longer the indictment of the grand jury who presented it. Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney."

*Id.* at 216–217, 80 S.Ct. 270 (quoting *Ex Parte Bain,* 121 U.S. 1, 10, 13, 7 S.Ct. 781, 30 L.Ed. 849 (1887), *overruled on other grounds by United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985)).

Unlike the majority of this court, the *Stirone* Court did not authorize a reviewing court to examine the evidence presented at trial to determine whether the indictment's omission of an essential element constituted harmless error. In my view *Stirone* establishes that, absent an indictment that sets forth each element, a reviewing court cannot be assured that the grand jury made the finding required by the Fifth Amendment: that there is probable cause that the defendant committed the charged offense.[17]

Notably, when a defendant does not challenge its sufficiency in the district court proceedings, an indictment must be reviewed under a more deferential standard. *See Brown,* 995 F.2d at 1505. However, even under that standard, the indictment must still contain "words of similar import" to the element in question. *Id.* (quoting *United States v. Vogt,* 910 F.2d 1184, 1201 (4th Cir.1990)). An indict-

ment's mere citation of a statute is not an adequate substitute for "words of similar import to the element in question." *Brown,* 995 F.2d at 1505 (internal quotation marks omitted); *see also United States v. Cabrera–Teran,* 168 F.3d 141, 146 (5th Cir.1999) ("[A] statutory citation, standing alone, cannot substitute for including an element of the crime in an indictment."); *United States v. Forbes,* 16 F.3d 1294, 1297 (1st Cir.1994) (stating that "[a] statutory citation, standing alone, cannot substitute for setting forth the elements of a crime" but that "it may reinforce other references in the indictment so as to render it valid"); *United States v. Hernandez,* 980 F.2d 868, 871 (2d Cir.1992) (per curiam) ("We are aware that a citation to a statutory section alone is not sufficient to cure a defective indictment that fails to allege all the elements of an offense...."); *United States v. Zangger,* 848 F.2d 923, 925 (8th Cir.1988) ("If an essential element of the charge has been omitted from the indictment, the omission is not cured by the bare citation of the charging statute.") *United States v. Pupo,* 841 F.2d 1235, 1239 (4th Cir.1988); ("An indictment that must rely on a statutory

---

**17.** *Stirone's* reasoning has been applied by many circuits. *See, e.g., United States v. Tran,* 234 F.3d 798, 809 (2d Cir.2000) (citing *Stirone* and concluding that, because an indictment's failure to allege an essential element is a jurisdictional defect, "it cannot be cured by the absence of prejudice to the defendant"); *Jones v. Smith,* 231 F.3d 1227, 1232 (9th Cir.2000) ("As the Supreme Court indicated in *Stirone* ..., where a defendant is convicted of a crime and where a grand jury never charges the defendant with an essential element of that crime, a constructive amendment of the indictment has occurred, and reversal is warranted."); *United States v. Spruill,* 118 F.3d 221, 227 (4th Cir.1997) ("It is well established ... that failure to recite an essential element of the offense in the indictment is not amenable to harmless error review."); *United States v. Nunez,* 180 F.3d 227, 230 (5th Cir.1999) (stating that "[w]e have

consistently followed *Stirone* and have reversed convictions where the jury might have convicted [a] defendant on new elements to the offense not charged by the grand jury") (internal quotation marks omitted). *United States v. Keller,* 916 F.2d 628, 634, 636 (11th Cir.1990) (noting that "an amendment [to the indictment] occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment" and that this constitutes "reversible error per se"). *But see United States v. Mojica–Baez,* 229 F.3d 292, 309–11 (1st Cir.2000) (disagreeing with the panel opinion in *Prentiss* and concluding that an indictment's failure to allege an essential element was subject to plain error review), *cert. denied,* —— U.S. ——, 121 S.Ct. 2215, 150 L.Ed.2d 209 (2001).

citation does not 'fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished. Furthermore, a statutory citation does not ensure that the grand jury has considered and found all essential elements of the offense charged.'") (internal quotation marks omitted). *But see United States v. James*, 980 F.2d 1314, 1316–19 (9th Cir.1992) (concluding that an indictment that failed to allege the status of the defendant or the victim in a rape prosecution under 18 U.S.C. §§ 1151, 1153, and 2241(a) was subject to harmless error analysis).[18]

In the instant case, in concluding that the indictment's failure to allege an essential element of an § 1152 violation is subject to harmless error analysis, the majority relies on *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) and *United States v. Mechanik*, 475 U.S. 66, 71–72, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986). I am not persuaded by the majority's reading of either decision.

In *Neder*, the Court distinguished cases that "defy harmless-error review" because they contain "a 'defect affecting the framework within which the trial proceeds'" from cases that involve "'simply an error in the trial process itself.'" *Id.* at 8, 119 S.Ct. 1827 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). It placed the failure to submit an element of an offense to the petit jury in the latter category, concluding that such failure could be reviewed for harmless error.

In support of this harmless error approach, the Court invoked decisions concerning errors in jury instructions and noted that these decisions reviewed the evidence presented at trial in order to assess the prejudicial effect of the instructional error. *See id.* at 9, 119 S.Ct. 1827 (stating that "[w]e have often applied harmless-error analysis to cases involving improper instructions" and citing case). The Court justified this approach, in part, by noting the procedural protections afforded to the defendant at trial. *See id.* ("[The defendant] was tried before an impartial judge, under the correct standard of proof and with the assistance of counsel; a fairly selected, impartial jury was instructed to consider all of the evidence and argument in respect to [his] defense against the tax charges.").

In contrast to the error in *Neder*, the error at issue in this case—an indictment's failure to allege an essential element of an offense—is better characterized as "a defect affecting the framework within which the trial proceeds"; it is not "simply an error in the trial process itself." As a result, there is not an established body of case law that has undertaken the kind of harmless error review that the majority

---

18. In *James*, the Ninth Circuit acknowledged that "[t]he indictment should have contained allegations that [the defendant] was an Indian and that the victim was an Indian." 980 F.2d at 1317. However, applying the liberal standard for assessing post-verdict challenges to indictments, it concluded that the error was harmless. In reaching that conclusion, the court stated that "the defendant must have been given adequate knowledge of the missing elements in order to satisfy the due process requirement: otherwise, reference to a statute in an indictment will not cure the defect in an indictment." *Id.* It noted that the

government had satisfied this requirement by providing the defendant with a copy of the grand jury proceedings, which included testimony that both the defendant and the victim were Indians.

*James's* conclusion that the provision of a grand jury transcript may substitute for allegations in an indictment is inconsistent with our holding in *Brown*, and I would decline to follow it. I also note that there is no indication in the record before us that the government provided Mr. Prentiss with "adequate knowledge of the missing elements," as it did in *James*. *Id.*

authorizes here. Indeed, rather than reviewing the evidence at trial, the overwhelming majority of courts confronted with the allegation that an indictment is deficient have limited their inquiry to the text of the indictment and the grand jury proceeding. *See United States v. Gama–Bastidas,* 222 F.3d 779, 786 (10th Cir.1999) (stating that the task of the court in assessing the sufficiency of an indictment in a post-verdict challenge is to search for the grand jury's charging intent, using whatever clues are available to us and construing the indictment with utmost liberality); *see also* n. 1, *supra* (collecting cases).

In my view, the majority reads too much into the Supreme Court's statement that structural errors occur in only a "very limited class of cases," *Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), and the fact that the Court has used the term "structural error" to describe only two types of grand jury errors. *See* Maj. op. at 983 (citing *Vasquez v. Hillery,* 474 U.S. 254, 264, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) and *Ballard v. United States,* 329 U.S. 187, 193, 67 S.Ct. 261, 91 L.Ed. 181 (1946)). The universe of errors is not completely described by the terms "structural" and "non-structural." *See Freytag v. Commissioner,* 501 U.S. 868, 896, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (Scalia, J., concurring in part and concurring in the judgment) (stating that a judgment must be set aside when an error "whether structural or not ... deprived the federal court of its requisite subject-matter jurisdiction"). Thus, without using the term "structural error," courts have held that an indictment's failure to allege the essential elements of an offense "cannot be cured by absence of prejudice to the defendant," *Tran,* 234 F.3d at 809; is "not amenable to harmless error review," *Spruill,* 118 F.3d at 227; and is "reversible error per se," *Keller,* 916 F.2d at 636.

This circuit's decisions prohibiting the constructive amendment of indictments provide additional support for this view. For example, in *United States v. Phillips,* 869 F.2d 1361, 1364 (10th Cir.1988), we noted that "[e]ver since *Ex Parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887) was decided ... it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself" (internal quotation marks omitted). We also stated that "[a]ny such amendment effected by the court's instructions would constitute plain error and *be reversible per se.*" *Id.* (emphasis added). *See also United States v. Davis,* 55 F.3d 517, 521 (10th Cir.1995) ("A variance that expands the indictment is considered a constructive amendment and is *per se reversible error.*") (emphasis added); *United States v. Mills,* 29 F.3d 545, 548 (10th Cir.1994) ("A constructive amendment that broadens an indictment is *reversible error per se,* because only the grand jury can amend an indictment.") (emphasis added). By directing the panel to review the record to determine whether there is evidence to support elements missing from the indictment, the majority authorizes on appeal what these cases forbid at trial: the broadening of the indictment by an entity other than the grand jury.

Moreover, two other circuits have refused to follow the majority's sweeping interpretation of *Neder. See United States v. Tran,* 234 F.3d 798, 809 n. 2 (2d Cir.2000) (stating that the panel opinion in *Prentiss* "convincingly reasoned that *Neder* was inapplicable to the failure of an indictment to state an offense" and "add[ing] that *Neder* concerned a constitutional error in the trial process, not an error that deprived the court of subject matter jurisdiction, which is never subject to harmless error review"); *United States v. Du Bo,* 186 F.3d 1177, 1180 (9th Cir. 1999) ("Until the Court applies *Neder's*

holding to the grand jury context or otherwise alters its grand jury jurisprudence, the rule that a timely challenged indictment that fails to contain elements of a crime requires reversal per se shall remain a vital part of our Federal criminal jurisprudence.") (internal quotation marks omitted); *see also United States v. Spinner*, 180 F.3d 514, 515–16 (3d Cir.1999) (refusing, in a case decided after *Neder*, to apply harmless error analysis to an indictment's failure to allege a jurisdictional element). *But see United States v. Mojica–Baez*, 229 F.3d 292, 309–11 (1st Cir.2000) (disagreeing with the panel opinion in *Prentiss* and concluding that "[w]e think we are compelled by the Supreme Court's decision in *Neder* to subject the indictment error in this case to plain error review").[19]

I agree with their reasoning.[20]  Because *Neder* does not address deficiencies in an indictment, I am unwilling to read it to implicitly overrule so many decisions that have specifically addressed the Fifth Amendment's requirement that grand jury find probable cause as to each element of the charged offense.

In my view, *Mechanik* is similarly inapplicable.  In that case, the Supreme Court examined the government's violation of Federal Rule of Criminal Procedure 6(d) by allowing two witnesses to testify in tandem before the grand jury.  The Court held that the petit jury's guilty verdict "rendered harmless any conceivable error in the charging decision that might have flowed from the violation." *Mechanik*, 475 U.S. at 72, 106 S.Ct. 938.  There was no

**19.** The Second Circuit has criticized the reasoning of *Mojica–Baez*. *See Tran*, 234 F.3d at 809 n. 2 ("To the extent that *Mojica–Baez* can be read to conclude that this type of error [i.e., the failure of an indictment to state an essential element of the offense] is not jurisdictional, we reject that conclusion here."). Its holding has also been questioned by a district court within the First Circuit. *See United States v. Wilkes*, 130 F.Supp.2d 222, 237–38 (D.Mass.2001) (applying *Mojica–Baez* as circuit precedent but stating that "in effect, the First Circuit did precisely what *Stirone* proscribed when it speculated [as to what the grand jury would have done]" and stating that, "[u]nder *Mojica–Baez*, ..., the prosecutor can do an end-run around the grand jury and cure crucial omissions just by notifying the defendant").

I also note that, in finding the deficiency in the indictment to be harmless, the First Circuit relied on the fact that the indictment was proper at the time it was returned and became deficient only because Supreme Court and circuit precedent subsequently changed. *See Mojica–Baez*, 229 F.3d at 310 ("It is one thing to vacate a conviction or sentence where the prosecutor failed to indict in accordance with the current state of the law.  It is quite another thing to vacate a conviction or sentence based on an indictment that was entirely proper at the time."). The circumstances are different here.

**20.** I also agree with Judge Richard Arnold's recent assessment of *Neder*:

> The Supreme Court [in *Neder*] has held that it is not always reversible error to fail to submit to a jury an essential element of a criminal charge.  If, for example, no reasonable jury could have found against the prosecution with respect to this element, the error can be treated as harmless.  The same thing, however, cannot be said of the other part of the ... principle ... that every element of a crime must be charged in an indictment (if the crime is federal).  As far as I am aware, no case has ever held that the omission of an element of a crime from an indictment can be harmless error. *In such cases, we do not ask whether a jury would have found that element on the evidence submitted to it, or, indeed, whether the grand jury would have returned an indictment including that element if it had been asked to do so.*  Rather, an indictment that omits an element of a crime is structurally deficient and provides no lawful basis for bringing anyone to trial. *Failure to include an essential element in a federal indictment warrants relief even if the government later proves the omitted element at trial.*

> *United States v. Moss*, 252 F.3d 993, 1004 (8th Cir.2001) (Arnold, J. dissenting) (emphasis added).

contention that the indictment failed to set forth an essential element of an offense and thus no allegation of a Fifth Amendment violation. *See United States v. Hooker*, 841 F.2d 1225, 1232 (4th Cir.1988) ("The absence of prejudice to the defendant in a traditional sense does not cure a substantive, jurisdictional defect in an indictment. Unlike the situation in *Mechanik*, the defect of a completely missing essential element cannot be cured by a later jury instruction because there is nothing for a petit jury to ratify.") (citations omitted); Wayne R. LaFave, Jerold H. Israel, & Nancy J. King, 4 *Criminal Procedure* § 15.6(f), at 418 (2d ed.1999) (observing that *Mechanik* did not involve a constitutional violation and noting that "the lack of a decision to indict by a lawfully constituted grand jury has always been considered a jurisdictional defect that cannot be cured by a subsequent trial."). Moreover, cases decided after *Mechanik* have continued to apply the principle that the failure of an indictment to allege the essential elements of an offense is grounds for reversal. *See, e.g., Tran*, 234 F.3d at 809; *Spinner*, 180 F.3d at 515–16.[21]

In summary, neither *Neder*, nor *Mechanik*, nor the weight of the evidence at trial deprives a defendant of the Fifth Amendment right to have a grand jury frame a charge by finding probable cause as to each essential element of the offense. Here, as the panel opinion held, the indictment against Mr. Prentiss contains no allegations of the status of either the victim or the defendant, facts that a majority of this court has found to constitute essential elements of the crime of arson within Indian country under 18 U.S.C. §§ 81 and 1152. Even under the liberal standard for assessing post-verdict challenges, the indictment's citation of § 1152 does not establish that the grand jury made any findings whatsoever as to the status of either individual. Accordingly, I would affirm the panel's conclusion that this is "a jurisdictional defect requiring dismissal, despite citation of the underlying statute in the indictment." *Brown*, 995 F.2d at 1505.[22]

**21.** The Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), underscores the importance of the indictment's factual allegations. The Court there held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S.Ct. at 2362–63. The Court suggested that the relevant facts must also be included in the indictment. Applying *Apprendi*, we held in *United States v. Jones*, 235 F.3d 1231, 1236 (10th Cir.2000), that an allegation that increases the penalty for an offense over the statutory maximum must be alleged in the indictment. In concluding that the evidence at trial may correct deficiencies in the indictment, the majority is at odds with these decisions too.

**22.** I acknowledge that, under the liberal standard for assessing post-verdict challenges, the same conclusion would not necessarily follow if the indictment had alleged the status of

either the defendant or the victim. For example, if the indictment cited § 1152 and alleged that the victim was an Indian and that the defendant committed the crime in Indian country, federal jurisdiction would exist regardless of the status of the defendant (i.e., under § 1152 if the defendant was a non-Indian and under § 1153 if he was an Indian). In that instance, one could plausibly argue that the citation to the statute, combined with the allegation of the victim's status and the allegation that the crime occurred on Indian country rendered the indictment sufficient. *Cf. United States v. Heath*, 509 F.2d 16, 20 (9th Cir.1974) (concluding that an indictment citing § 1153 and alleging that the victim and the defendant were Indians was sufficient to supporting a conviction under § 1152 when evidence at trial revealed that the defendant's tribal rights had been terminated); *Henry v. United States*, 432 F.2d 114, 115–18 (9th Cir.1971) (finding harmless error when indictment cited § 1152 instead of § 1153

and charged a crime committed by an Indian against Indians).