Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 9, 2003     Decided January 9, 2004

No. 03-3018

UNITED STATES OF AMERICA,
APPELLEE

v.

JAMES JOSEPH PICKETT,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00014–01)

———

*Eli Gottesdiener*, appointed by the court, argued the cause and filed the briefs for appellant.

*Arthur B. Spitzer* argued the cause and filed the brief for *amici curiae* American Civil Liberties Union of the National Capital Area, in support of appellant.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*David B. Goodhand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *John R. Fisher* and *Elizabeth Trosman*, Assistant U.S. Attorneys.

Before: SENTELLE, RANDOLPH and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

Concurring opinion filed by *Circuit Judge* ROGERS.

SENTELLE, *Circuit Judge*: James Pickett appeals from a judgment of conviction entered upon a jury verdict finding him guilty of violating 18 U.S.C. § 1001 by making false statements in a matter within the jurisdiction of the legislative branch of the government of the United States. Because the indictment failed to state an essential element of the offense, and because the evidence presented to the jury was also insufficient to sustain a conviction as to the same element, we vacate Pickett's conviction and order the dismissal of the indictment.

## I. Background

On October 15, 2001, an anonymous letter delivered to Senator Thomas Daschle at his Senate office on Capitol Hill contained a white powder that tested positive for Anthrax–a dangerous, often deadly, disease-causing agent. Other similar Anthrax incidents occurred around the same time and geographic area. On November 7, 2001, while the Anthrax investigation was not only ongoing but much on the minds of law enforcement, members of Congress, and the public, Pickett committed what he now admits was a "bad joke." The facts of the incident are not in dispute. Appellant, then a Capitol Police officer, was on duty at a security post at the entrance to the Cannon Office Building tunnel, which connects the House Office Buildings to the Capitol Building. Because of the level of security measures occasioned by the Anthrax incident, which followed close on the heels of the tragic attacks on the United States on September 11, 2001, the tunnel was closed to members of the public, but open to authorized personnel including Members of the House of

Representatives. The security post was accessible by members of the public and consisted largely of a podium, a desk, a magnetometer, and an x-ray machine. At approximately 5 p.m. on November 7, Officer Kari Morgansen left her seat at the podium and moved to the desk seat vacated by appellant, who was going on break. At the desk Officer Morgansen discovered a handwritten note and a small pile of white powder. The note read, "PLEASE INHALE YES THIS COULD BE?  CALL YOUR DOCTOR FOR FLU — SYMPTOMS.  THIS IS A CAPITOL POLICE TRAINING EXERCIZE [sic]!  I HOPE YOU PASS!"

Officer Morgansen inquired of Officer John Caldwell, who was also on duty at the post, if he knew anything about the note or the powder. He did not. Neither of the officers believed that the powder was actually Anthrax. Nonetheless, because of the state of alert and the earlier incidents, they called a superior and blocked the powder and note from public view lest anyone become alarmed. The superior, Sergeant Turner, asked who else had been at the desk. Upon learning appellant had been sitting there, he contacted him by phone and asked him what was on the desk. After some delay, appellant advised that "it was a joke" and that the powder "was Equal." Although the powder was never tested, the government has never contended that it was actually Anthrax or anything other than the dietary sugar substitute appellant suggested. Sergeant Turner conducted some further investigation and reported the incident to the Criminal Investigation Division of the Capitol Police.

After some further investigation, the United States Attorney submitted the matter to a grand jury. The grand jury returned an indictment charging Pickett with making false statements in violation of 18 U.S.C. § 1001 and obstructing and interfering with the Capitol Police in violation of 40 U.S.C. § 212a–2(d). Pickett moved to dismiss the indictment on the ground that his conduct was covered by neither statute. The District Court granted the motion to dismiss as to the obstruction charge, but denied it as to the charge of violating section 1001. The government filed a superseding

information recharging the obstruction count. A jury trial commenced on November 13, 2002. The jury received the case at midday on November 20, 2002. After an afternoon of deliberations and an overnight recess, the jury deliberated for a full business day on November 21 before returning a verdict of not guilty on the obstruction charge and guilty on the false statements charge. The District Court entered a judgment on February 11, 2003, sentencing appellant to two years probation, 200 hours of community service, and a $100 special assessment. The court suspended execution of the sentence because "significant questions have been raised by [the defense] which deserve attention from the circuit before consequences are visited on [appellant]." Appellant then filed the current appeal.

## II.   The Statute

The statute of conviction, 18 U.S.C. § 1001, reads as follows:

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully–

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation;  or

(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title or imprisoned not more than 5 years, or both.

(b) Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.

(c) With respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only to–

(1) administrative matters, including a claim for payment, a matter related to the procurement of property or services, personnel or employment practices, or support services, or a document required by law, rule, or regulation to be submitted to the Congress or any office or officer within the legislative branch; or

(2) any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate.

Congress completely rewrote this section in a 1996 amendment, Pub. L. No. 104–292, § 2.

Prior to the revision, the section read:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

The 1996 amendment was responsive to the Supreme Court decision in *Hubbard v. United States*, 514 U.S. 695 (1995). In *Hubbard* the Supreme Court reversed the conviction of a petitioner who had been found guilty of making false statements in unsworn filings in a bankruptcy court. In reversing that conviction, the Court held that the terms "departments" and "agencies" in § 1001 referred to executive departments and agencies and did not include the courts. *Id.* at 715. In holding that the section encompassed only false statements to the executive branch, the Court expressly considered and overruled its prior decision in *United States v. Bramblett*, 348

U.S. 503 (1955), wherein the Court had construed the statute as encompassing a "falsehood . . . directed to an office within the legislative branch." *Hubbard*, 514 U.S. at 702. In short, the Supreme Court held that the prior version of § 1001 did not encompass false statements like the one Pickett allegedly made within the jurisdiction of the legislative branch.

Thereafter, Congress passed the present version of the statute encompassing false statements made "in any manner within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States," to the extent set forth in the statute. Therefore, as the present case involves charges of making a false statement within the jurisdiction of the legislative branch, our analysis must focus on the language of the statute relevant to that branch.

## III.   Analysis

The count of conviction in the indictment charged that:

> On or about November 7, 2001, in the District of Columbia, the defendant, JAMES JOSEPH PICKETT, in a matter within the jurisdiction of the legislative branch of the Government of the United States, that is, the United States Capitol Police, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations; that is, the defendant wrote a note and placed that writing at a United States Capitol Police security station with arrows directed to a nearby quantity of white powder, which writing stated – "PLEASE INHALE YES THIS COULD BE? CALL YOUR DOCTOR FOR FLU – SYMPTOMS. THIS IS A CAPITOL POLICE TRAINING EXERCIZE! [SIC] I HOPE YOU PASS!" – when the defendant knew the powder was not anthrax and his placement of the powder and the writing were not part of a United States Capitol Police training exercise.

Pickett contends that the District Court erred in denying his motion to dismiss this indictment for its failure to allege an

essential element of the offense. More specifically, he argues that an indictment charging a violation of § 1001 by the making of a false statement "in a matter within the jurisdiction of the *legislative* branch of the Government" must further allege that the charged conduct fell within the specifications of 18 U.S.C. § 1001(c)(1) or (2). In this appeal, the Government has at no time claimed that whatever matter may have encompassed Pickett's alleged false statement was an administrative matter covered by subsection (1), and therefore, Pickett argues, the indictment was not valid without allegations that the "statement" was made in an investigation or review. He argues that the allegations of count 1 do not meet the requirements of Fed. R. Crim. P. 7(c)(1) that an "indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Because § 1001 renders unlawful the making of a false statement within the jurisdiction of the legislative branch only with respect to administrative matters, investigations, or reviews, an indictment that charges a false statement made in a matter within the jurisdiction of that branch without alleging that it was within one of the statutory categories has not charged an offense. Otherwise put, it is accepted law that an indictment must "contain[ ] the elements of the offense intended to be charged." *Russell v. United States*, 369 U.S. 749, 763 (1962).

The Government takes the position that we must hold that the indictment is sufficient and charges all the elements of the offense. The Government contends further that the language of subsection (c) is not elemental and need not be charged in the indictment. In support of this contention, the Government offers *United States v. Harris*, 536 U.S. 545 (2002), for the proposition that "federal laws usually list all offense elements in a single sentence." *Id.* at 552 (internal quotations omitted) (citing *Castillo v. United States*, 530 U.S. 120, 125 (2000)). Therefore, the Government claims that it need allege and prove only the elements drawn from the first sentence of § 1001:

(1) The defendant made a statement;

(2) The statement was made within the jurisdiction of the executive, legislative or judicial branches, as defined by the statute;

(3) The statement was false, fictitious or fraudulent as far as the defendant knew;

(4) The statement was made "knowingly and willfully"; and

(5) The statement was material to the matter or inquiry within the government's purview.

The indictment charges all five of those elements. Thus, the Government contends, the motion to dismiss was properly denied. The language in the indictment, in the Government's view, must be sufficient as it "tracks the statutory language of 18 U.S.C. § 1001," Gov. Br. at 19 (quoting *United States v. Lang*, 766 F. Supp. 389, 395–96 (D. MD. 1991)).

Pickett is correct and the Government incorrect. The Government's argument is built on a foundation of selective quotation. True, the indictment tracks the language of the statute. However, the indictment tracks the language of only a portion of the statute. As Rule 7(c)(1) succinctly requires, the indictment "must be a plain, concise, and definite written statement of the *essential facts constituting the offense charged*." On the plain language of the statute, the conduct charged against Pickett, making false statements and representations in a matter within the jurisdiction of the legislative branch, does not constitute an offense unless it comes within the categories set forth by § 1001(c): as applicable here, that it be within an "investigation or review," as delineated by the language of subsection (c)(2). As the Supreme Court taught in *Russell*, it is a fundamental "protection[ ] which an indictment is intended to guarantee," that the indictment "contain[ ] the elements of the offense intended to be charged and sufficiently apprise the defendant of what he must be prepared to meet." 369 U.S. at 763 (internal quotation marks omitted) (citing *Cochran and Sayre v. United States*, 157 U.S.

286, 290 (1895), and numerous other cases). While the Government is correct that indictments have been upheld where they tracked the language of the statute, *see, e.g.*, *United States v. Lang*, *supra*, this indictment tracks only part of the statutory language. While this is of course the norm, statutes being often lengthy documents and generally only partially applicable to the crime at issue, the indictment against Pickett omits language essential to the definition of the offense which it purports to charge.

The Government's invocation of *Harris v. United States* for the proposition that "federal laws usually list all offense elements in a single sentence," does not help its cause. 536 U.S. at 552 (internal quotations omitted) (quoting *Castillo v. United States*, 530 U.S. 120, 125 (2000)). The *Harris* Court was reviewing a conviction under 18 U.S.C. § 924(c)(1)(A) for possession of a firearm in relation to a drug-trafficking offense. A subsection of that statute, 924(c)(1)(A)(ii), provides for a sentence of seven years if the firearm "is brandished." The Supreme Court language concerning the usual delineation of elements is in the context of determining whether brandishing was an element of an offense or a sentencing factor. It is true that the Court stated that "federal laws usually list all offense elements 'in a single sentence' and separate the sentencing factors 'into subsections.'" *Id.* at 552 (quoting *Castillo* at 125). However, it is clear from the inclusion of the adverb "usually" that the Supreme Court understood that federal laws do not always so list elements. Indeed, in the *Harris* opinion, the Court discussed and distinguished *Jones v. United States*, 526 U.S. 227 (1999), wherein the Court had considered the federal carjacking statute, 18 U.S.C. § 2119. The *Harris* Court described that statute as being similar in structure to 18 U.S.C. § 924, but noted that in *Jones* it had held that the separate subsections did set forth elements of offenses to be charged. *Harris*, 536 U.S. at 553.

The comparison of *Harris* and *Jones* leaves us with this question: If 18 U.S.C. § 1001(c)(2) does not set forth elements of an offense, what does it do? The questioned subsection in *Harris*, 18 U.S.C. § 924(c)(1)(A)(ii) stated a

sentencing factor; § 1001(c)(2) obviously doesn't. What was Congress doing when it put that subsection in the statute? Congress rather plainly told us. Again, the Government's argument depends upon selective quotation. The Government's brief, like the indictment, tracks the language of the statute after omitting the first clause of subsection (a). That section states, "except as otherwise provided in this section." Later in that section, specifically subsection (c), the statute states, "with respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only to" the circumstances set forth therein. In other words, by the language and structure of the statute, the requirements of § 1001(c) are elements of the offense of making a false statement in the legislative branch. Elements of an offense "must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." *Jones*, 526 U.S. at 232. The indictment against Pickett does not charge all the elements of the offense. His motion to dismiss was well taken.

This does not, however, end our inquiry. The Government argues that even if the indictment is defective, that defect is harmless "as the evidence of this jurisdictional element was 'overwhelming' and 'essentially uncontroverted.'" The Government relies on *United States v. Cotton*, 535 U.S. 625 (2002), for the proposition that the harmless error standard applies. We note (although the Government's brief does not) that the Supreme Court in *Cotton* was dealing with an indictment defective for the omission of a sentencing factor under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), not the omission of an element as in the present case. The Government does, however, cite a case from another circuit which applied harmless error review to an indictment that failed to allege essential elements of a crime. *See, e.g.*, *United States v. Prentice*, 256 F.3d 971, 981 (10th Cir. 2001) (en banc). The *Prentice* court specifically held that "failure of an indictment to allege an essential element of a crime does *not* deprive a district court of subject matter jurisdiction; rather, such failure is subject to harmless error review." *Id.* at 981 (emphasis in original). The Government cites cases from two

other circuits, *United States v. Suarez*, 313 F.3d 1287 (11th Cir. 2002), and *United States v. Adkins*, 274 F.3d 444 (7th Cir. 2001), as being to the same effect as *Prentice*. In fact, they are not. Both *Suarez* and *Adkins*, like *Cotton*, concerned indictments defective for the omission of *Apprendi* factors, not of essential elements.

This circuit has never considered the question of whether an indictment flawed by omission of an essential element is subject to harmless error review, nor need we today. Contrary to the Government's assertions, the evidence of an "investigation or review" is neither overwhelming nor uncontroverted. Indeed, the evidence is so far from overwhelming that it would have been difficult for Pickett to find it in order to controvert it. Even at the present advanced stage of this litigation, it is not at all clear what the Government's theory is as to the identity of the investigation or review in which the false statement is alleged to have occurred. The Government's primary argument on appeal is that the requirement of § 1001 for an investigation is satisfied by the investigation which the false statement occasioned. This theory just does not square with the words of § 1001. That section requires first that the false statement be made "in any matter within the jurisdiction of the . . . legislative . . . branch." 18 U.S.C. § 1001(a). That it be made *in* a matter within the jurisdiction of the legislative branch would seem to contemplate that the matter existed at the time of the making of the statement. The section further requires that, with specific reference to the legislative branch, it will apply only to an "investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate." 18 U.S.C. § 1001(c)(2). Not only was the investigation of the false statement not in existence so that the statement could have been made in it, the Government has pointed us to no evidence supporting the proposition that such investigation was pursuant to the authorities set out in subsection (c)(2). The Government's construction of the statute is not only unnatural and illogical, it would render subsection (2) meaningless. Presumably any false statement made in any matter

within the legislative branch which became the subject of a prosecution would have been the subject of an investigation triggered by the statement. Therefore, accepting the Government's interpretation "would require us to eliminate a provision of the statute, a clear violation of a fundamental canon of construction." *Investment Company Institute v. FDIC*, 815 F.2d 1540, 1547 (D.C. Cir. 1987).

To refute the conclusion that the plain language of § 1001(c)(2) requires that for prosecution of a statement made in the legislative branch, the statement must occur in a then-pending investigation or review, the Government offers two cases: *United States v. Rogers*, 466 U.S. 475 (1984), and *United States v. Oker*, 111 F.3d 146 (D.C. Cir. 1997) (Williams, J., concurring in part and dissenting in part). While both those opinions contain language discussing investigations sparked by false statements of a defendant, neither concern a violation of 18 U.S.C. § 1001(c). Indeed, at the time of both offenses, Title 18 U.S.C. § 1001(c) had not yet been enacted. The Government's reliance on the investigation sparked by the false statement to satisfy the requirements of § 1001(c)(2) simply does not work.

This leaves the Government's second theory for satisfaction of the "investigation or review" element. That second theory is that Pickett made a false statement in the concurrent investigation surrounding the Anthrax letters sent to Senator Daschle and others. This theory also fails. Not only has the Government not offered overwhelming and uncontroverted evidence that the statement was made in that investigation, it has offered none at all. The most the evidence shows is that the investigation was ongoing at the time of the alleged making of the statement, and that agents connected to that investigation were sent to all calls involving suspicious packages. The statute does not apply to statements made concurrently with an investigation, even if those statements concerned the same or similar subject matter. The statute requires that the statements be made *in* such a matter. The Government has offered no evidence to meet that requirement.

13

## Conclusion

Before concluding, we would be remiss if we did not commend the district judge for staying his judgment in light of the serious questions involved in this appeal. Blessed with a full record and the time to contemplate the legal issues involved, we conclude that the questions are not only serious, but raise such problems that the judgment of conviction must be reversed and the indictment dismissed.[1]

*So ordered.*

---

[1] While appellant raised other issues, and an amicus put forth an issue arguably outside the jurisdiction of this court, in view of our disposition, we need not discuss those matters.

1

ROGERS, *Circuit Judge*, concurring: I concur in the holding that the judgment of conviction must be reversed because the indictment failed to inform Pickett of the charges against him by omitting an essential element of the offense. I write separately regarding the government's alternative argument that the error was harmless. The court states that we need not consider whether harmless error review applies, *see* op. at 10, rejecting the government's position that it produced overwhelming and uncontroverted evidence of an "investigation or review" under 18 U.S.C. § 1001(c)(2). Op. at 10, 12. The court's holding and evidentiary discussion, therefore, cannot properly be understood to endorse the government's position that, notwithstanding the omission in the indictment of an element of the offense, which thereby denied the defendant notice of the charges against him, harmless error review would apply had the government's evidence satisfied § 1001(c)(2).

The Fifth Amendment ensures the right not to be prosecuted for an infamous crime other than through an indictment. The Sixth Amendment provides that "the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." To be sufficient, then, an indictment must contain the essential elements of the offense intended to be charged, sufficiently apprise the defendant of what he must be prepared to meet, and establish an adequate record of the offense so that the defendant may plead double jeopardy in any related future proceeding. *Russell v. United States*, 369 U.S. 749, 763–64 (1962). "The inclusion of all elements . . . derives from the Fifth Amendment, which requires that the grand jury have considered and found all elements to be present." *United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir. 1988) (en banc).

Despite the Supreme Court's adherence to the position that a conviction based on an indictment that fails to inform the defendant of the nature of the charges against him cannot stand, *see Russell*, 369 U.S. at 771–72; *cf. Stirone v. United States*, 361 U.S. 212, 217 (1960); *see also United States v. Cruikshank*, 92 U.S. 542, 558 (1875), the government would find legal authority for harmless error review in *United*

*States v. Cotton*, 535 U.S. 625, 631–32 (2002), and *United States v. Prentiss*, 256 F.3d 971, 981 (10th Cir. 2001) (en banc). Appellee's Br. at 22. Both cases are readily distinguished. As the court points out, *Cotton* concerned a sentencing factor under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and not the omission of an element of the offense. Op. at 10. And although there is broad language in the Tenth Circuit's opinion, the court in *Prentiss* was neither confronted with an indictment that failed to provide the defendant with notice of the charges against him nor with a defendant who timely challenged the sufficiency of his indictment. *Prentiss*, 256 F.3d at 982.

Given the law of this circuit, *see United States v. Thomas*, 444 F.2d 919 (D.C. Cir. 1971), and the virtual unanimity among the circuits that, where an indictment failed to inform the defendant of the charges against him, a resulting conviction cannot stand,[1] the government fails to point to legal authority that would entitle Pickett's conviction to harmless error review. Our holding reversing Pickett's conviction for failure of the indictment to notify him of the charges against him thus concludes the analysis. The court's further discussion of the government's failure to present evidence of an

---

[1] *See, e.g.*, *United States v. Van Tran*, 234 F.3d 798, 809 (2d Cir. 2000) *overruled on other grounds by United States v. Thomas*, 274 F.3d 655, 666 (2d Cir. 2001); *United States v. Spinner*, 180 F.3d 514, 516 (3d Cir. 1999); *United States v. Spruill*, 118 F.3d 221, 227 (4th Cir. 1997); *United States v. Rudisill*, 2000 U.S. App. LEXIS 10380 (4th Cir. 2000) (unpublished); *United States v. Nuñez*, 180 F.3d 227, 230–31 (5th Cir. 1999); *United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989); *United States v. Leichtnam*, 948 F.2d 370, 377 (7th Cir. 1991); *United States v. Begnaud*, 783 F.2d 144, 147 & n.4 (8th Cir. 1986); *United States v. Novak*, 217 F.3d 566, 574 (8th Cir. 2000); *United States v. Du Bo*, 186 F.3d 1177, 1179–80 (9th Cir. 1999); *United States v. Keller*, 916 F.2d 628, 634, 636 (11th Cir. 1990); *cf. United States v. Mojica–Baez*, 229 F.3d 292, 308, 311 (1st Cir. 2000); *see also United States v. Woodruff*, 1999 U.S. App. LEXIS 24320, at *4 n.5 (9th Cir. 1999) (unpublished).

"investigation or review" under § 1001(c)(2) serves only to demonstrate that the question of whether or not harmless error review could apply is not before the court. It does not mean that, had the government presented such evidence, harmless error review would be appropriate.