# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 4, 2021          Decided July 9, 2021

No. 19-3093

UNITED STATES OF AMERICA,
APPELLEE

v.

SAMIRA JABR,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cr-00105-1)

---

*A. J. Kramer*, Federal Public Defender, argued the cause and filed the briefs for appellant.

*Daniel J. Lenerz*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Elizabeth Trosman*, *Elizabeth H. Danello*, and *Michael J. Friedman*, Assistant U.S. Attorneys.

Before: SRINIVASAN, *Chief Judge*, WILKINS, *Circuit Judge*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*:  Samira Jabr drove across the country from California to the District of Columbia with an intention to meet with then-President Trump in person.  She believed herself to be a victim of a conspiracy between law enforcement and various casinos she visited on her trip, and she felt compelled to inform the President about it face-to-face.  When her car's GPS device marked her arrival at the White House, she parked the car, exited it, scaled two fences, ran across a courtyard, and sprinted up the stairs of the building towards the entrance, where Secret Service officers intercepted her.

However ill-conceived Jabr's plan to attain an audience with the President may have been in its design, it was all the more unlikely to succeed because of a significant hiccup in its implementation:  Jabr, it turned out, had dashed up the stairs of the wrong building.  She had tried to enter the United States Treasury Building, which sits immediately adjacent to the White House.

The government charged Jabr under a statute that bars entering the "White House or its grounds" without lawful authority.  But the government does not dispute on appeal that the Treasury Building lies outside the "White House grounds" for purposes of that statute.  So whereas Jabr had mistakenly thought the Treasury Building was the White House, the government mistakenly thought the Treasury Building was part of the White House grounds.  And because Jabr's alleged conduct of attempting to enter the Treasury Building did not violate the statute, the district court acquitted Jabr of committing the charged offense.  But the court then found her guilty of attempting to commit the charged crime, explaining that the statute prohibits attempted entries onto the White House grounds as well as successful ones.

3

Jabr challenges her conviction on a number of grounds, including a contention that the flaw in the charge against her left the district court without jurisdiction. We reject Jabr's various challenges to her conviction. But we vacate the restitution order entered against her, which the government now agrees was erroneous.

I.

On April 20, 2018, having followed GPS directions to the White House, Samira Jabr parked her car on 15th Street N.W. in D.C., next to the U.S. Treasury Building. She thought she had been victimized by a conspiracy between law enforcement and casinos she had visited en route to D.C. from California, and "she wanted to speak with President Trump to 'let him know what's going on.'" *United States v. Jabr*, No. 18-cr-105, slip op. at 4 (D.D.C. May 16, 2019), J.A. 206 (quoting interview).

Jabr exited her car on 15th Street and scaled the fence lining the eastern perimeter of the Treasury Building. She ran across the building's courtyard with her head ducked down because "she 'saw a cop car parked.'" *Id.* (quoting interview). She then jumped over a second, shorter fence "that was about the height of her waist and locked with a padlock." *Id.* Once on the other side of the second fence, she ran up a set of stairs to the locked door of the Treasury Building. There, she was arrested at gunpoint by Secret Service officers.

Jabr gave a recorded interview, which was admitted into evidence at trial. In the interview, she stated that she "knew that nobody was supposed to go up there," but she thought she would be safer in jail than in the hands of the people she believed were conspiring against her. *Id.* at 5, J.A. 207 (quoting interview). When asked if she had known that the

building she was running towards was the Treasury Building and not the White House, Jabr said, "No, the female cop told me, she's like, 'But you know that's not the White House right?' and I was like, well I feel silly now." *Id.* at 6, J.A. 208 (quoting interview).

The government charged Jabr in an information with one count of "Entering or Remaining in [a] Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(1)," a federal misdemeanor. Information at 1, *United States v. Jabr*, No. 18-cr-105 (D.D.C. Apr. 23, 2018), J.A. 1. The information specifically alleged that Jabr "did knowingly enter and remain in a restricted building and grounds, that is, the White House Complex and United States Department of Treasury Building and Grounds, without lawful authority to do so." *Id.* The provision referenced in the information, 18 U.S.C. § 1752(a)(1), prohibits "knowingly enter[ing] or remain[ing] in any restricted building or grounds without lawful authority to do so." The statute defines "restricted buildings or grounds" to include, among other things, any "restricted area . . . of the White House or its grounds." *Id.* § 1752(c)(1)(A).

Jabr waived her right to a jury, and the district court presided over a bench trial. At the close of the government's case, Jabr moved for a judgment of acquittal. She first argued that the Treasury Building was not part of the "White House or its grounds" covered by the statute, and that the government thus had presented no evidence that she had entered a prohibited area under the statute. Second, she contended that the government had failed to show that she was "without lawful authority" to enter the area, as is required by the statute. Later, she argued that the district court lacked jurisdiction over the case because the "areas named in the information are not within the specific Congressional definition." Defendant's Reply Re:

Motion for Judgment of Acquittal at 3, *United States v. Jabr*, No. 18-cr-105 (D.D.C. Sept. 10, 2018), J.A. 147.

The district court issued an opinion in which it both addressed Jabr's legal challenges and fulfilled its factfinding role in the bench trial. The court initially held that it had jurisdiction over the case because the information charged a federal crime. The court then determined that, as a matter of law, the government had failed to prove a completed violation of 18 U.S.C. § 1752(a)(1) because there was no evidence that Jabr went into "the White House or its grounds": that area, the court held, was smaller than the "White House Complex" charged in the information and did not encompass the Treasury Building.

The district court then took up the government's alternative contention that, because the statute also criminalized attempts, *see* 18 U.S.C. § 1752(a), Jabr could be found guilty of attempting to enter the "White House or its grounds." The court first explained that Federal Rule of Criminal Procedure 31 permitted it to consider an attempt charge even though it was not expressly mentioned in the information. The court then rejected Jabr's argument that she was entitled to a judgment of acquittal on that charge based on the government's ostensible failure to demonstrate that she lacked "lawful authority" to enter the restricted area.

The district court then "transition[ed] to its role as factfinder" on the attempt charge. *Jabr*, slip op. at 35, J.A. 237. The court found "beyond a reasonable doubt that Ms. Jabr is guilty of attempting to violate Section 1752(a)(1)." *Id.* The court observed that "factual impossibility is no defense to the crime" in this case, and then explained: "If the circumstances had been what Ms. Jabr perceived them to be, her conduct would have qualified as a violation of the underlying

substantive crime. Ms. Jabr verbalized her intent to reach the White House to speak with President Trump. And her actions exemplified her criminal intent to 'enter[] or remain[] in [a] restricted building or ground without lawful authority to do so.'" *Id.* at 36, J.A. 238 (alterations in original).

The court sentenced Jabr to time served followed by 12 months of supervised release. The court also granted the government's request to order her to pay restitution in the amount of $480 for a wallet she had stolen on her way to D.C. After Jabr contested the restitution order, the government declined to defend it. The court then determined that it lacked continuing authority to vacate the order but stayed the payment obligation, indicating that it would have vacated the order if it retained authority to do so.

## II.

On appeal, Jabr argues that her conviction should be vacated for three reasons. First, she contends that the information did not allege a federal crime. Second, she submits that the district court impermissibly effected a constructive amendment of the information. Third, she argues that there was insufficient evidence to show that she had acted "without lawful authority." 18 U.S.C. § 1752(a)(1). Finally, Jabr also renews her contention that the district court erred in entering the restitution order.

## A.

We begin with Jabr's argument that the charging instrument against her—here, an information—did not adequately allege a federal offense. She frames that objection primarily as a challenge to the district court's jurisdiction.

The federal criminal code vests district courts with original and exclusive jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231. "If an indictment or information alleges the violation of a crime set out in Title 18 or in one of the other statutes defining federal crimes, that is the end of the jurisdictional inquiry." *United States v. Fahnbulleh*, 752 F.3d 470, 476 (D.C. Cir. 2014) (alteration and internal quotation marks omitted). That is the case here.

Jabr's jurisdictional objection is grounded in her contention that the acts alleged in the information did not constitute a federal offense. Recall that section 1752(a)(1), the provision expressly invoked in the charging document, requires that the defendant have "knowingly enter[ed] or remain[ed] in any restricted building or grounds without lawful authority to do so." 18 U.S.C. § 1752(a)(1). And the statute goes on to define "restricted building or grounds" to include "any posted, cordoned off, or otherwise restricted area . . . of the White House or its grounds." *Id.* § 1752(c)(1)(A). The information in this case, though, charged Jabr with "knowingly enter[ing] and remain[ing] in a restricted building and grounds, *that is, the White House Complex and United States Department of Treasury Building and Grounds*, without lawful authority to do so." Information, *supra*, at 1, J.A. 1 (emphasis added). For purposes of this appeal, all parties agree that the area described in the information ranges beyond the "White House or its grounds" specified in the statute. And Jabr submits that, because the information did not necessarily allege facts constituting a federal crime, the district court lacked jurisdiction.

The jurisdictional inquiry, however, asks only whether the information alleges the violation of a federal crime, not whether the facts it alleges in fact constitute such a violation. *See Fahnbulleh*, 752 F.3d at 476. The latter question can

matter when we consider whether an information or indictment is *defective*—that is, whether the charging instrument "does not charge all the elements of the offense." *United States v. Pickett*, 353 F.3d 62, 68 (D.C. Cir. 2004); *see* Fed. R. Crim. P. 7(c)(1). But those sorts of defects in an information or indictment do not deprive a district court of jurisdiction. *United States v. Pettigrew*, 346 F.3d 1139, 1145 (D.C. Cir. 2003). The information in this case alleges a violation of section 1752(a)(1), and that suffices to substantiate the district court's jurisdiction.

To the extent Jabr contends that the allegedly defective information in this case requires setting aside her conviction even apart from any effect on the district court's jurisdiction, any such defect was harmless. An information, like an indictment, must state "the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). We have interpreted that rule, in conjunction with a defendant's constitutional right to notice of the charges against her, *see Cole v. Arkansas*, 333 U.S. 196, 201 (1948), to require the charging instrument to "charge all the elements of the offense," *Pickett*, 353 F.3d at 68. A charging document that does not charge all elements of the offense is thus defective. *Id.* at 67–68.

We need not decide whether the information in this case was defective in that regard because any defect was harmless. The Federal Rules require us to "disregard[]" any "error, defect, irregularity, or variance that does not affect substantial rights." Fed. R. Crim. P. 52(a). "The Supreme Court has articulated two versions of this rule, one for nonconstitutional errors and one for errors of constitutional dimension." *United States v. Powell*, 334 F.3d 42, 45 (D.C. Cir. 2003). The stricter (more defendant-friendly) standard governs constitutional errors, as to which an error "is harmless if it appears 'beyond a

reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

Even assuming arguendo that any defect in Jabr's information would be subject to that stricter standard, the error was harmless. The district court, in its role as factfinder, specifically found that Jabr was guilty of attempted trespass "of the 'White House or its grounds.'" *Jabr*, slip op. at 36, J.A. 238. The court thus made its finding of guilt under a proper conception of the restricted area under the statute, rather than the broader area described in the information. And indeed, the court made that finding only after examining at length the difference between the area listed in the statute and that described in the information. In addition, Jabr had ample notice of the possibility of an attempt conviction given that the government had argued for one in an initial oral argument before the district court, in a written brief on the issue, and in a second oral argument. And Jabr does not (and could not) deny that the statute by its terms encompasses attempts. *See* 18 U.S.C. § 1752(a). In those circumstances, it is plain that any defect in the charging instrument did not contribute to the verdict or affect Jabr's substantial rights. *Cf. United States v. Mechanik*, 475 U.S. 66, 73 (1986) (holding that "the petit jury's verdict rendered harmless any [Rule 6(d)] error in the [grand jury's] charging decision").

## B.

Jabr next contends that, by convicting her of attempted entry onto the White House grounds when she was charged only with the completed crime of entry, the district court constructively amended the information, which Jabr argues is impermissible. We perceive no error in the district court's consideration of an attempt charge.

The circumstances in which a charging document may be amended vary depending on whether the charging instrument is an indictment or an information. In the case of an indictment, our court "recognizes two types of impermissible divergences between indictment and proof." *United States v. Lorenzana-Cordon*, 949 F.3d 1, 4 (D.C. Cir. 2020). The first, called an amendment or a constructive amendment, "occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them." *Gaither v. United States*, 413 F.2d 1061, 1071 (D.C. Cir. 1969) (footnotes omitted). The second, called a variance, "occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Id.*; *see Lorenzana-Cordon*, 949 F.3d at 4.

Here, Jabr seeks to apply the notion that constructive amendments of indictments are impermissible. This case, however, involves an information, not an indictment. And in the case of an information, the district court "may permit an information to be amended at any time before the verdict or finding," "[u]nless an additional or different offense is charged or a substantial right of the defendant is prejudiced." Fed. R. Crim. P. 7(e). The distinction between indictments and informations in that regard reflects that indictments are issued by grand juries and informations are issued by the government: "Since the prosecutor is the sole source of the charge he or she is equally free to change it, and the restrictive rules forbidding an amendment of an indictment have no application to an information." Charles A. Wright & Arthur R. Miller, 1 Fed. Prac. & Proc. Crim. § 129 (4th ed.) (footnote omitted).

Jabr thus errs in relying on the constructive-amendment prohibition applicable to indictments. Assuming that the

district court's decision to consider (and ultimately convict on) an attempt theory amounted to an amendment of the information, the amendment was permissible.

First, the amendment occurred "before the verdict or finding." Fed. R. Crim. P. 7(e). The district court identified the error in the information's description of the restricted area and determined that it could proceed on an attempt theory before it "transition[ed] to its role as factfinder." *Jabr*, slip op. at 35, J.A. 237.

Second, the amendment did not charge "an additional or different offense." Fed. R. Crim. P. 7(e). The district court did not change the offense from the one listed in the information but merely convicted her of an attempt to commit that same offense. The Federal Rules of Criminal Procedure specifically allow for "a defendant [to] be found guilty of . . . an attempt to commit the offense charged," which is precisely what happened here. Fed. R. Crim. P. 31(c)(2).

Finally, the amendment did not prejudice "a substantial right of the defendant." Fed. R. Crim. P. 7(e). Jabr makes no argument that she was prejudiced by the court's decision to consider whether she had committed an attempted violation of 18 U.S.C. § 1752(a)(1). To be sure, she had a constitutional entitlement to "notice of the specific charge" brought against her. *Cole*, 333 U.S. at 201. But as just explained, the offense charged in Jabr's information did not change. And insofar as she was entitled to notice of the correction of a defect in the geographic area listed in the information, she of course had full notice of the possibility of that correction: it was she who argued that the information was faulty in that respect in the first place.

It is true that the language of Rule 7(e), in stating that "the court may permit an information to be amended," appears to contemplate the court's permitting an amendment by the prosecution rather than amending the charge of its own accord, as occurred here. But any procedural irregularity in that regard worked no prejudice against Jabr, for the same reasons that, as we have explained, any defect in the information was harmless.

## C.

Jabr next contends that there was insufficient evidence to prove beyond a reasonable doubt that she was "without lawful authority" to "enter" the White House or its grounds, 18 U.S.C. § 1752(a)(1). The question for us is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, "could have found the essential elements of the crime"—here, that Jabr acted without lawful authority— "beyond a reasonable doubt." *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Given our standard of review, the key question is what 'rational juror[s]' could conclude, not what they had to conclude." *United States v. Bikundi*, 926 F.3d 761, 787 (D.C. Cir. 2019) (alteration in original) (quoting *United States v. Williams*, 836 F.3d 1, 7 (D.C. Cir. 2016)).

A rational trier of fact could have found, based on all the evidence, that Jabr lacked lawful authority to enter the White House or its grounds. As an initial matter, a rational trier of fact could presume as a matter of common knowledge that an ordinary citizen without any known authorization would not be allowed inside the White House or on its grounds. And indeed, Jabr acknowledged, in statements admitted into evidence, that she "knew that nobody was supposed to go up there." *Jabr*, slip op. at 5, J.A. 207 (quoting interview). Jabr's actions corroborate her acknowledgment. Not only did she need to

scale two fences, one of which contained a padlock, but once she got past the fences, she ran with her head ducked down because she "saw a cop car parked." *Id.* at 4, J.A. 206 (quoting interview). In light of that evidence, a rational trier of fact could readily find beyond a reasonable doubt that Jabr attempted to enter the White House grounds "without lawful authority."

### D.

Jabr lastly contends, and the government now concedes, that the restitution order imposed against her by the district court (at the government's request) was entered in error. The district court itself would have vacated its restitution award if it thought it had authority to do so. We agree that the award was erroneous.

Restitution may be imposed only when authorized by statute. *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011). The statute that would authorize restitution for the crime in this case, 18 U.S.C. § 3663, "compensate[s] victims only for losses caused by the conduct underlying the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 418 (1990); *see id.* at 413 n.1 (noting that § 3579, about which the *Hughey* Court wrote, had been recodified as § 3663 by the time of the opinion). Here, the award of restitution related to Jabr's theft of a wallet in a casino in Nevada while en route to D.C. As the parties agree, that conduct cannot fairly be characterized as conduct underlying her conviction for attempted entry onto the White House grounds. We will thus vacate the restitution order.

14

\* \* \* \* \*

For the foregoing reasons, we vacate the district court's restitution order and we affirm the judgment in all other respects.

*So ordered.*